**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

# 18 CV 1050

|  |  |
|---|---|
| THOMAS T. PROUSALIS, JR., | ) ) ) |
| *Petitioner*, | ) ) ) |
| *v.* | ) )    03-cr-1509 (DLC) |
| UNITED STATES, | ) ) ) |
| *Respondent*. | ) ) ) ) |

## MOTION TO VACATE JUDGMENT

The petitioner, Thomas T. Prousalis, Jr., appearing *pro se*, hereby files this motion to vacate

his judgment in *United States v. Prousalis*, No. 03-cr-1509 (S.D.N.Y. Oct. 28, 2004).

Respectfully submitted,

February 1, 2018

Thomas T. Prousalis, Jr.
*Pro Se*
10501 S. Falconbridge Court
Richmond, Virginia  23238
(202) 701-9016
N1TP@msn.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| THOMAS T. PROUSALIS, JR.,<br><br>*Petitioner,*<br><br>v.<br><br>UNITED STATES,<br><br>*Respondent.* | 03-cr-1509 (DLC) |

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO VACATE JUDGMENT

The petitioner, Thomas T. Prousalis, Jr., appearing *pro se*, hereby files this memorandum

of law in support of his motion to vacate his judgment in *United States v. Prousalis*, No. 03-cr-1509

(S.D.N.Y. Oct. 28, 2004).

# ARGUMENT

MR. PROUSALIS'S JUDGMENT IN *UNITED STATES v. PROUSALIS*, No. 03-cr-1509 (S.D.N.Y. Oct. 28, 2004) MUST BE VACATED IN VIEW OF THE GOVERNMENT'S BREACH OF HIS PLEA AGREEMENT

*Overview*

The petitioner, Thomas T. Prousalis, Jr., a former Washington lawyer and Air Force pilot, was charged in a three-count superseding indictment in *United States v. Prousalis*, No. 03-cr-1509 (S.D.N.Y. Oct. 28, 2004), in connection with making false statements and omissions in his corporate client's registration materials, filed with the Securities and Exchange Commission. In June 2004, Mr. Prousalis entered into a plea agreement with the government and agreed to plead guilty to three offenses: conspiracy to commit securities fraud, wire fraud, and mail fraud, in violation of 18 U.S.C § 371; securities fraud, in violation of 17 C.F.R. § 240.10b-5; and failure to disclose interest of counsel, in violation of 17 C.F.R. § 228.509.

Mr. Prousalis, among other outside[1] legal, accounting, and financial advisers, participated in drafting the registration materials with the officers and directors of busybox.com, inc. (*sic*), his corporate client. More than a year later, busybox declared bankruptcy and ultimately failed. Thereafter, Mr. Prousalis was indicted. The government never charged busybox, or its officers and directors, with wrongdoing.

In the arraignment hearing on the indictment, the government conceded that "all of the charges" were related to Mr. Prousalis making false statements and omissions in the registration materials, in violation of Rule 10b-5 (codified at 17 C.F.R. § 240.10b-5).

---

[1] In the indictment, Mr. Prousalis was described by the government as "outside counsel" to his corporate client, busybox.com, inc., a Delaware corporation. *Ex. 2 at 2.*

Mr. Prousalis was sentenced to 57 months imprisonment, three years of supervised release, and ordered to pay $12,800,000 in restitution, representing the proceeds of the IPO.

Mr. Prousalis completed his sentence and supervised release, and currently makes monthly restitution payments.

*The Government's Breach of the Plea Agreement*

On June 15, 2004, after contentious negotiations, Mr. Prousalis[2] entered into a plea agreement with the government, which provided, *inter alia*, that in consideration of his guilty plea to three offenses,[3] he would not be "further prosecuted criminally." *Ex. 4 at 2. See* Rule 11(c)(1)(A), Fed. R. Crim. P. (where "[i]f the defendant pleads guilty . . ., the plea agreement may specify that an attorney for the government will not bring . . . other charges.") The plea agreement described the three offenses with especial particularity. *Ex. 4 at 1-2.* The Court described the three offenses to Mr. Prousalis at the plea hearing with especial particularity. *Ex. 5 at 8-14.* The Court accepted the plea agreement and adjudged that Mr. Prousalis was guilty of the three offenses.[4] *Ex. 6 at 1.*

---

[2] Mr. Prousalis, a member of the The District of Columbia Bar for more than 25 years, directly participated with the government in the plea negotiations on June 15, 2004, in connection with the terms and conditions of the plea agreement. More specifically, Mr. Prousalis directly negotiated his guilty plea to three offenses in the indictment, which are described with especial particularity in the plea agreement. *Ex. 4 at 1-2.* Mr. Prousalis did *not* agree to plead guilty to any other offense in the indictment. The Court accepted the plea agreement and incorporated the three offenses in the judgment. *Ex. 6 at 1.*

[3] The three offenses are described in the plea agreement, as follows: "Count One charges the defendant with conspiracy to commit securities fraud, mail fraud, and wire fraud, in violation of Title 18, United States Code, Section 371 . . . Count Two charges the defendant with securities fraud, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 . . . Count Three charges the defendant with failure to disclose interest of counsel, in violation of Title 17, Code of Federal Regulations, Section 228.509." *Ex. 4 at 1-2.*

[4] The judgment states that "The defendant is adjudicated guilty of these offenses:" "Conspiracy to commit securities fraud, wire fraud and mail fraud," in violation of "18 USC § 371;" "Securities fraud," in violation of "15 USC § 78j(b) and 78ff;" and "Failure to disclose interest of counsel," in violation of "15 USC § 77xx." (*sic*) *Ex. 6 at 1.* However, the latter statute does *not* exist in our jurisprudence.

4

However, the government, in its response brief to Mr. Prousalis's *coram nobis* appeal, breached the plea agreement by alleging that Mr. Prousalis violated a criminal offense *outside* of the plea agreement – that his conviction should stand, regardless of Supreme Court precedent in *Janus*, because he "would still be guilty of aiding and abetting," in violation of "18 U.S.C. § 2(b)." *Prousalis v. United States*, No. 16-3431 (2d Cir. Mar. 7, 2017). *Ex. 8 at 19-20*. *See Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011) (holding that a secondary actor without ultimate authority has no liability under Rule 10b-5 in connection with false statements and omissions in a corporate client's registration statement). The government's appellate argument mirrored the Court's holding in its opinion and order in *Prousalis v. United States*, No. 16-3349 (S.D.N.Y. Sept. 19, 2016). *Ex. 7 at 7*. Simply put, the government relied on an alleged offense[5] in the indictment, which was *not* included in the factual allegations of the indictment or the three offenses of the plea agreement. *Ex. 2 at 1-2*.

Mr. Prousalis, an experienced lawyer, after direct, contentious negotiations with the government, agreed to plead guilty to three offenses in the indictment, which were described with especial particularity in the plea agreement. *Ex. 4 at 1-2*. Mr. Prousalis did *not* agree to plead guilty to a violation of "18 U.S.C. § 2,"[6] or any other offense, cited in the indictment. *Ex. 2*. Moreover,

---

[5] Since the indictment on December 29, 2003, until its appellate response brief on March 7, 2017, the government *never* factually alleged – in the indictment, superseding indictment, correspondence, pleadings, plea agreement, plea hearing, sentencing hearing, judgment of conviction, Justice Department press release – that Mr. Prousalis "aided and abetted" anyone. *Ex. 8 at 19-20*. To be sure, although "18 U.S.C. § 2" is cited in a standalone, undescribed citation at the separated ends of Counts 2 and 3 of the indictment, nowhere in the indictment did the government factually allege that Mr. Prousalis aided and abetted busybox.com, inc., or its officers and directors, or any other person. Due process requires more. *U.S. Const. amend. V*.

[6] Importantly, nowhere in the indictment, or the record, are there any factual allegations that Mr. Prousalis "aided and abetted" anyone, until the Court's opinion and order in *Prousalis v. United States*, No. 16-3349 (2d Cir. Sept. 19, 2016). *Ex. 7*. And, neither the government, the Court, nor the Second Circuit panel identified the person(s) that Mr. Prousalis aided and abetted – because none exists in the factual allegations of the indictment.

"aiding and abetting," in violation of "18 U.S.C. § 2" was decidedly *not* an included offense in the Court's judgment. *Ex. 6 at 1.*.

   In its opinion and order, the Court held that Mr. Prousalis's conviction should stand, regardless of *Janus,*[7] because he "aided and abetted," in violation of "18 U.S.C. § 2(a)." *Prousalis*

_____

[7] The Supreme Court's holding in *Janus* clarified the "unambiguous" textual meaning of a federal securities statute – 17 C.F.R. § 240.10b-5 (Rule 10b-5) – without regard to which side of the docket a securities fraud case was filed. *Janus,* 131 S. Ct. at 2302. However, as the Court stated in its opinion and order, the Second Circuit has *not* yet ruled on whether *Janus* applies to criminal enforcement actions. But, legal authoritative support makes it abundantly clear that *Janus* does apply to civil and criminal enforcement actions. *See* Matthew Martens, Mark Cahn and Caitlin Monahan, *Whether the Supreme Court's Decision in Janus Applies to Government Enforcement Actions Under Section 10(b) and Rule 10b-5(b),* 46 Sec. Reg. & L. Rep. (BNA) 936 (May 12, 2014)*;* C. Steven Bradford, *"Make" Means "Make": Rejecting the Fourth Circuit's Two-Headed Interpretation of Janus,* 68 SMU L. Rev. 645 (2015); Thomas A. Hanusik and Megan L. Wolf, *Janus: The Supreme Court's Statement About Ultimate Authority,* Criminal Justice, Vol. 27, No. 4 (Winter 2013); Steven S. Thel, *Taking Section 10b Seriously: Criminal Enforcement of SEC Rules,* 2014 Colum. Bus. L. Rev. 1 (2014). *See also Affidavit* of Professor Steven S. Thel, who opined in Mr. Prousalis's case that the registration materials did *not* violate the federal securities laws, citing the operative language of Rule 10b-5:

>    After reviewing the referenced documents, I am of the opinion that Amendment No. 7 to Form SB-2 Registration Statement of busybox.com, inc. and the Prospectus therein – the Registration Statement that I understand the SEC declared effective on June 26, 2000 – does not contain any false statement of material fact or omit to state any material fact necessary to make the statements made not misleading with respect to the nature of the underwriting agreement between Barron Chase and busybox.com, inc., the use of proceeds by busybox.com, inc., the purchase of securities by Mr. Prousalis and principals of busybox.com, inc., or Mr. Prousalis's fees. *Ex. 1.*

   Mr. Martens is the former Chief Litigation Counsel, Division of Enforcement of the Securities and Exchange Commission; Mr. Cahn is the former General Counsel of the Securities and Exchange Commission; Professor Bradford is The Earl Dunlap Distinguished Professor of Law at the College of Law of the University of Nebraska; Mr. Hanusik is a former Senior Counsel, Division of Enforcement of the Securities and Exchange Commission, and the former Assistant Chief, Criminal Division, Fraud Section, of the Department of Justice; and Professor Thel is The I. Wormser Professor of Law at the School of Law of Fordham University, and is a former Enforcement Attorney, Office of General Counsel of the Securities and Exchange Commission.

   Since the commencement of this case, the central theory of the government's prosecution of Mr. Prousalis was that he made false statements and omissions in registration materials, in violation of Rule 10b-5 – *not aided and abetted* them. Indeed, the government conceded in the arraignment hearing that "*all of the charges*" in the indictment are related to Mr. Prousalis making false statements and omissions in the registration materials, in violation of Rule 10b-5. *Ex. 3 at 6.* The government's theory of prosecution has never shifted, until the Supreme Court's intervening substantive change in 10b-5 law. And, since *Janus,* the government has engaged in a desperate, *Whac-A-Mole®* defense of Mr. Prousalis's conviction – the last iteration being – more than 14 years later – that he was an "aider and abettor." *Ex. 8 at 19-20.*

   The underlying substantive offense in Mr. Prousalis's prosecution was that he *directly* "made" false statements and omissions in the registration materials *himself,* in violation of Rule 10b-5. But, under *Janus,* Mr. Prousalis's alleged securities fraud offense is no longer subject to liability. Thus, in an aiding and abetting charge, under 18 U.S.C. § 2(b), Mr. Prousalis cannot be liable for such an alleged underlying substantive offense, because *Janus* absolves secondary

*v. United States*, No. 16-3349 (S.D.N.Y. Sept. 19, 2016). *Ex. 7 at 7*. And, the Second Circuit, in a summary order, affirmed the Court's holding, adjudging that Mr. Prousalis was an aider and abettor, in "violation of 18 U.S.C. § 2(b)." *Prousalis v. United States*, No. 16-3431 (2d Cir. June 30, 2017). *Ex. 9 at 3*.

Importantly, aiding and abetting is *not* an independent offense, as, otherwise, expressly argued by the government in its brief and before the panel. *Ex. 8 at 19-20. See U.S. Attorneys' Manual*, Section 2476, *18 U.S.C. § 2 Is Not An Independent Offense*, citing *United States v. Kegler*, 724 F.2d 190, 200 (D.C. Cir. 1983). In an action under § 2 of the aiding and abetting statute, the government must "prove" that an "underlying substantive offense" was committed by "someone other than the aider and abettor." *United States v. Lange*, __ F.3d __, 2016 WL 9268936, at *6 (2d Cir. Aug. 15, 2016). Here, the government did *not* prove (or even allege) that an underlying substantive offense was committed by someone other than Mr. Prousalis. More specifically, the government did *not* prove (or even allege) that an underlying substantive offense was committed by Mr. Prousalis's corporate client, or its officers and directors, whatsoever.[8] *Ex. 2*. Simply put,

---

actors without ultimate authority of liability under Rule 10b-5, whether it is an implied private right of action or a government enforcement action. *See In re Pfizer Inc. Sec. Litig.*, No. 14-2853 (2d Cir. Apr. 12, 2016) (where in an implied private right of action the Court held that an adviser who was "significantly involved" in preparing a prospectus did *not* "make" the statements under Rule 10b-5, when only the corporate client had the "statutory obligation" to file the prospectus with the SEC, and nothing in the prospectus indicated that any statements were "attributed" to the adviser); *SEC v. Kelly, et al.*, No. 08-cv-612 (CM) (S.D.N.Y. September 22, 2011) (where in a government enforcement action the district court dismissed securities fraud claims under Rule 10b-5 against two defendants "under the new *Janus* standard" because they were secondary actors without ultimate authority).

Moreover, an aider and abettor, like any other criminal defendant, must be *proven* to be "blameworthy in mind" – *mens rea* – a fundamental requirement before liability attaches. *Elonis v. United States*, 575 U.S. ___ (2015), citing *Morrissette v. United States*, 342 U.S. 246, 250 (1952). But, Mr. Prousalis cannot not be "blameworthy in mind" for the alleged underlying substantive offense under Rule 10b-5, because *Janus* absolves secondary actors of liability for such offense. *Morrissette* at 252.

[8] The facts show that neither Mr. Prousalis's corporate client, busybox.com, inc., or its officers and directors, was charged with wrongdoing. Instead, the government charged Mr. Prousalis, an outside legal advisor, with conspiracy and securities fraud. Mr. Prousalis was *not* an officer, director, or principal shareholder of busybox. Mr. Prousalis did

the government *never* proved (or even alleged) the requisite elements of a charge of aiding and abetting, under 18 U.S.C. § 2.

Under the express terms and conditions of the plea agreement, Mr. Prousalis agreed to plead guilty to three offenses: conspiracy to commit securities fraud, mail fraud, and wire fraud, in violation of 18 U.S.C. § 371; securities fraud, in violation of 17 C.F.R. § 240.10b-5; and failure to disclose interest of counsel, in violation of 17 C.F.R. § 228.509. The three offenses are described in the plea agreement with especial particularity. *Ex. 4 at 1-2.* The Court described the three offenses to Mr. Prousalis at the plea hearing with especial particularity. *Ex. 5 at 8-14.* Mr. Prousalis did *not* agree to plead guilty to "aiding and abetting," in violation of "18 U.S.C. § 2," or any other offense. More importantly, the Court's judgment shows that Mr. Prousalis was adjudged guilty of these three offenses, and no other offense. *Ex. 6 at 1.*

Indeed, the Court accepted the plea agreement and, in keeping with its terms and conditions, incorporated the three offenses in its judgment.[9] *Ex. 6 at 1. See* Rule 11(c)(3)(A), Fed. R. Crim. P., (where the district court may agree to accept the plea agreement).

The applicable terms and conditions of the plea agreement are as follows:

> In *consideration* of his plea to the *above offense[s]*,[10] the *defendant will not be further prosecuted criminally* by this Office (except for criminal tax violations

---

not sign the registration materials. Mr. Prousalis was a secondary actor without ultimate authority. Thus, Mr. Prousalis had no securities fraud liability under Rule 10b-5. *Janus*, 131 S. Ct. at 2302.

[9] The Court's judgment states that "The defendant is adjudicated guilty of these offenses:" "Conspiracy to commit securities fraud, wire fraud and mail fraud," in violation of "18 USC § 371;" "Securities fraud," in violation of "15 USC § 78j(b) and 78ff;" and "Failure to disclose interest of counsel," in violation of "15 USC § 77xx." (*sic*) *Ex. 6 at 1.* The latter statute does *not* exist in our jurisprudence.

[10] The "*above offense[s]*," as described with especial particularity in the plea agreement, are: "Count One charges the defendant with conspiracy to commit securities fraud, mail fraud, and wire fraud, in violation of Title 18, United States Code, Section 371 . . . Count Two charges the defendant with securities fraud, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 . . . Count Three charges the defendant with failure to disclose interest of counsel, in violation of Title 17, Code of Federal Regulations, Section 228.509." *Ex. 4 at 1-2.*

as to which this Office cannot, and does not, make any agreement) for his participation in the scheme to cause false statements and knowing misrepresentations to be made to investors in the initial public offering of busybox.com, inc., as charged in Counts One, Two, and Three of the Indictment. (emphasis added) *Ex. 4 at 1-2.*

The plea agreement is pellucid that the contractual "*consideration*" of the plea agreement were the three "*above offense[s].*" Therefore, Mr. Prousalis cannot be "further prosecuted criminally" for any other offense in his case without materially breaching the plea agreement. "Plea agreements are to be interpreted under principals of contract law," *Ramirez v. United States*, 286 F. Supp. 2d 243 (S.D.N.Y. 2003), citing *Santabello v. New York*, 404 U.S. 257 (1971)). *See Restatement (Second) of the Law of Contracts*, § 71 (1981); Robert Braucher, *Interpretation and Legal Effect in the Second "Restatement of Contracts,"* 81 Colum. L. Rev. 1 (Jan. 1981), pp. 13-18.

Here, the government's aiding and abetting argument in its appellate brief and before the Second Circuit panel – adopted *in toto* by the panel in its summary order – disregarded the express terms and conditions of the plea agreement, so as to skirt Supreme Court precedent, and, otherwise, ensure that Mr. Prousalis's securities fraud conviction coffin remained nailed shut. *Ex. 9.*

As a result of the government's bad faith argument – resulting in the panel adjudging Mr. Prousalis guilty of aiding and abetting, in violation of "18 U.S.C. § 2(b)" – the government materially breached the plea agreement. Mr. Prousalis was "further prosecuted criminally," which violated the express terms and conditions of the plea agreement. *Ex. 4 at 2.* Therefore, Mr. Prousalis is entitled to have his guilty plea "set aside" (vacated) by the Court, pursuant to Rule 11(e)), Fed. R. Crim. P. (where a defendant may have his guilty plea "set aside" under a meritorious collateral attack of his conviction). *United States v. Elashyi*, 554 F.3d 480, 501-02 (5th Cir. 2008) (where a conviction was vacated when the government breached a plea agreement not to further

prosecute charges). *See United States v. Couto*, 311 F.3d 179 (2d Cir. 2002) (where a guilty plea may be withdrawn if there are valid grounds for withdrawal and if granting the motion would be fair and just); *United States v. Cimino*, 381 F.3d 124 (2d Cir. 2004) ("Where the government breaches a plea agreement the defendant is entitled to withdraw his plea . . ."); *United States v. Lawlor*, 168 F.3d 633, 638 (quoting *United States v. Brady*, 808 F.2d 944, 947 (2d Cir. 1986) (" . . . [t]he remedy for a breached plea agreement is either to permit the plea to be withdrawn or to order specific performance of the agreement.")

If a defendant pleads guilty as part of a plea agreement, the government must "strictly" adhere to the terms and conditions of its promises in the agreement. *Sanford v. United States,* No. 16-1840 (2d Cir. 2016) (where plea agreements are to be construed "strictly against the government"); *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) (same); *United States v. Tang*, 214 F.3d 365, 368 (2d Cir. 2000) (same). *See United States v. Moscahlaidis*, 868 F.2d 1357, 1361 (3rd Cir. 1989) (where the government "must adhere strictly to the terms of the bargain [plea agreement] it strikes with defendants."); *United States v. Lewis,* 476 F.3d 367, 387-88 (5th Cir. 2007) (where to assess a violation of a plea agreement the court must consider "whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement"). Here, after many years of contentious litigation, the government, in bad faith, raised a new, unwarranted theory of prosecution – "aiding and abetting," in violation of "18 U.S.C. § 2(b)" – which lies *outside* of the factual allegations of the indictment, the consideration of the plea agreement, and the judgment of this Court.

Moreover, the government's charge of aiding and abetting, in violation of 18 U.S.C. § 2(b), is not enforceable because the alleged offense is *outside* of the limitations period. 18 U.S.C. § 3282 (where ". . . no person shall be prosecuted, tried, or punished for any offense, not capital, unless the

10

indictment is found or the information is instituted *within five years* after such offense shall have been committed.") (emphasis added)   *See U.S. Attorneys' Manual*, Section 650, *Length of Limitations Period.  See also California Public Employees' Retirement System v. ANZ Securities, Inc., et al.*, 582 U.S. ___ (2017) (where the failure to bring a securities fraud action within the limitations period resulted in a dismissal with prejudice).  *See also* C. Corman, 1 *Limitations of Actions* § 1.1, pp. 4-5 (1991).  Nowhere in the indictment, or the record, is there a factual allegation that Mr. Prousalis aided and abetted anyone. The government is estopped from "further prosecut[ing] criminally" Mr. Prousalis as an aider and abettor, in violation of 18 U.S.C. § 2(b), because the limitations period has run.

Therefore, in view of the government's breach of Mr. Prousalis's plea agreement, his judgment of conviction must be vacated.

## CONCLUSION

In view of the foregoing argument, Mr. Prousalis requests that the Court grant his motion to vacate his judgment of conviction.

## HEARING REQUESTED

Mr. Prousalis hereby requests a hearing on his motion to vacate his judgment of conviction.

Respectfully submitted,

February 1, 2018

Thomas T. Prousalis, Jr.
*Pro Se*
10501 S. Falconbridge Court
Richmond, Virginia  23238
(202) 701-9016
N1TP@msn.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2018, I mailed the foregoing original and two copies of

the motion to vacate judgment of conviction, and an accompanying memorandum of law, to the

Clerk of the Court, United States District Court for the Southern District of New York, and a copy

of same to the following person, by United States Mail, first-class postage-prepaid:

      Hon. Joon H. Kim
      Acting United States Attorney
      United States Attorney's Office
      1 St. Andrew's Plaza
      New York, New York 10007

                    Thomas T. Prousalis, Jr.

# INDEX TO EXHIBITS

| Exhibit | Number |
|---|---|
| Steven S. Thel, *Affidavit*, March 31, 2004 . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| Superseding Indictment, May 10, 2004 . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| Arraignment Hearing Transcript, May 12, 2004 . . . . . . . . . . . . . . . . . . . | 3 |
| Plea Agreement, June 15, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| Plea Hearing Transcript, June 15, 2004 . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| Judgment, October 28, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| Opinion and Order, *Prousalis v. United States*, No. 16-3349 (S.D.N.Y. Sept. 19, 2016) . . | 7 |
| Response Brief, *Prousalis v. United States*, No. 16-3431 (2d Cir. Mar. 7, 2017) . . . . . | 8 |
| Summary Order, *Prousalis v. United States*, No. 16-3431 (2d Cir. June 30, 2017) . . . . . | 9 |

# EXHIBIT 1

Steven S. Thel, *Affidavit*, March 31, 2004

# AFFIDAVIT

STATE OF NEW JERSEY )
                       )
COUNTY OF MERCER )

Before me the undersigned authority personally appeared Steve Thel who upon being first duly sworn deposes as follows:

1. I am an expert in the area of federal securities regulation. I am the I. Maurice Wormser Professor of Law at Fordham University in New York City, where I regularly teach courses in contracts, corporate finance and securities regulation. My resume, which documents my qualifications and includes a list of my publications, is appended to this report as Exhibit 1. I have testified on behalf of the Government of the United States as an expert on federal securities regulation in criminal securities fraud trials and I have been retained to testify as an expert by the SEC. I have also testified as an expert and submitted expert reports, declarations and affidavits on federal securities law in various other trials and arbitrations. I frequently serve as a public arbitrator with the NASD.

2. I have been retained by counsel on behalf of Thomas T. Prousalis, Jr. in connection with the criminal matter entitled United States v. Thomas T. Prousalis, Jr. (S.D.N.Y. 03-Cr. 1509). In preparing this Affidavit, I have reviewed the following documents among other materials relating to this matter: the Indictment; Amendment No. 7 to Form SB-2 Registration Statement of busybox.com, Inc., and the Prospectus contained therein, dated May 23, 2000; Form 10-QSB for the quarter ended June 30, 2000, of busybox.com; Mr. Prousalis' retainer agreement with busybox.com (then known as Busy Box, Inc.), dated December 9, 1998; Mr. Prousalis' statement to busybox.com, dated June 26, 2000; Mr. Prousalis' Schedule 13D, dated June 26,

2000; Mr. Prousalis' account statements for June and July 2000 from Barron Chase Securities;

and a letter from Patrick A. Grotto, the Chairman and CEO of busybox.com, to the Executive

Vice President of Fiserv Correspondent Services, Inc. (I understand Fiserv was the clearing firm

for Barron Chase), dated June 30, 2000.  These documents have been provided to me by counsel

and Mr. Prousalis, and I assume their authenticity.  Copies of these documents other than the

Indictment are attached hereto as cumulative Exhibit 2 (a-g).  I have considered the information

contained in those documents as an aid to understanding this matter and to making this Affidavit,

but I have not attempted to determine the truth of any factual matters that may be in controversy.

I will be compensated for my time in this matter at my normal rate and I will be reimbursed for

my out-of-pocket expenses.  My compensation is in no way dependent on the conclusions I

reach or the outcome of this case.

3. After reviewing the referenced documents, I am of the opinion that Amendment No. 7

to Form SB-2 Registration Statement of busybox.com and the Prospectus therein–the

Registration Statement that I understand the SEC declared effective on June 26, 2000–does not

contain any false statement of material fact or omit to state any material fact necessary to make

the statements made not misleading with respect to the nature of the underwriting agreement

between Barron Chase and busybox.com, the use of proceeds by busybox.com, the purchase of

securities by Mr. Prousalis and principals of busybox.com, or Mr. Prousalis' fees.  I am also of

the opinion that the disclosures with respect to these matters in the Registration Statement were

in compliance with the federal securities laws and consistent with common practice in the field

of federal securities law.  To put a point on the matter, while others might have handled the

Registration Statement differently, I would be surprised that any would find Mr. Prousalis'

handling inappropriate.

4. In particular, the allegation that Mr. Prousalis failed to disclose his fees accurately in the Registration Statement is not well founded. To begin with, legal fees are included in Part II of the Registration Statement, not in the Prospectus, which is the document provided to investors making investment decisions. Moreover, the SEC's rules under Regulation SB clearly provide that if the amount of fees are not known when a registration statement is filed, an estimate should be provided and identified as such. In Part II of Amendment No. 7 to the Registration Statement filed by busybox.com, legal fees of $375,000 are disclosed *as an estimate*. Mr. Prousalis's statement reflects legal fees charged in the amount of $475,000 for the Registration Statement. In my opinion, the ultimate bill does not differ from the stated estimate in an amount that a reasonable investor would consider material and does not make the estimate given, which was clearly marked as an estimate, inaccurate.

5. I am aware that the retainer agreement between Mr. Prousalis and busybox.com references a fee of $375,000 or 7.5 percent of the gross aggregate offering, whichever is greater. However, I am also aware that fees are negotiable and that, inasmuch as the Registration Statement was signed by busybox.com and by its named officers and directors, and not by Mr. Prousalis, the Registration Statement should be read as a statement by busybox.com that it would not in the end pay Mr. Prousalis a percentage of the offering. In any event, Mr. Prousalis did in fact ultimately bill for a flat fee and not for a percentage of the gross proceeds of the offering.

6. I am also aware that Mr. Prousalis also billed busybox.com $475,000 for his representation of busybox.com before the NASDAQ Stock Market, and requested a retainer for the following year's SEC work, exclusive of registration statements, in the amount of $250,000.

3

These fees did not have to be disclosed in the Registration Statement.  Legal representation in connection with listing on the NASDAQ Stock Market constitutes a matter outside the retainer agreement, and, more importantly, outside the registration process; indeed, such work is often performed by underwriters' counsel and billed to the issuer separately.  Similarly, the federal securities laws do not preclude the collection of a retainer for future work and do not require the disclosure of such retainers in registration statements.  Finally, busybox.com could properly use the proceeds of the offering to pay these fees, and doing so was consistent with the statements made in the Registration Statement, which repeatedly stated that the proceeds would be used for operations and working capital, *inter alia.*

7. While the federal securities laws do not require an exact statement of proceeds and expenses to be included in a registration statement, they do require an issuer to disclose its expenses and net proceeds in its first periodic report after a registration statement becomes effective.  Regulation SB Item 701(f), 17 C.F.R. § 228,701(f).  (Ironically, this requirement shows that the law does not require that a registration statement contain an exact statement of legal fees and other expenses, for if it did, there would be no reason for this explicit requirement.)  Busybox.com satisfied this requirement and properly disclosed its proceeds and expenses in its Form 10-QSB for the quarter ended June 30, 2000.  Furthermore, in *his* Schedule 13D report dated June 26, 2000, Mr. Prousalis disclosed that he had purchased busybox.com securities and that he had used his legal fees from busybox.com to purchase those securities, and further described the outlines of his retainer agreement with busybox.com.

8. I understand that prior to the closing of the public offering, Barron Chase, the underwriter, demanded that principals of the company use their anticipated salaries and bonuses,

and that Mr. Prousalis use his fees, to purchase approximately 19 percent of the securities, and that they acquiesced to this demand. I am aware that the Government contends in the Indictment that Mr. Prousalis conspired with others to "borrow" funds from Barron Chase to use to purchase those shares, without appropriate disclosures and to the detriment of investors. In my opinion, it was not unlawful for Mr. Prousalis and the principals to purchase securities in the public offering or to fund those purchases with money properly paid them by busybox.com, even when busybox.com received those funds from the public offering. Mr. Prousalis did not improperly borrow funds from Barron Chase. The funds credited to Mr. Prousalis in connection with the closing of the public offering were, based on his submitted statement, due and owing for services rendered and to be rendered by him to busybox.com.

9. Officers, directors, principals and professionals associated with an issuer of securities may properly purchase securities in the issuer's public offering. In fact, the market often views such participation as a sign of confidence in the company's future and as an effective commitment by those persons associated with the company, and thus a positive sign for investors.

10. Similarly, busybox.com could properly use the proceeds of the offering to pay Mr. Prousalis his fees and its principals their bonuses. These payments are consistent with the statements in the Registration Statement regarding the use of proceeds. The Registration Statement disclosed that funds from the offering would be used to pay salaries, bonuses and legal fees for the offering. The funds used to pay Mr. Prousalis for his services on the NASDAQ listing and as a retainer for future work are properly considered as part of funds for operations and/or working capital. Moreover, all the payments to Mr. Prousalis were disclosed by

5

busybox.com and Mr. Prousalis in reports filed with the SEC after the public offering, as described above.

11.  I cannot find any legal basis for the Government's allegation that Barron Chase "loaned" funds to Mr. Prousalis to purchase busybox.com securities, let alone that Mr. Prousalis violated any law in that connection.  It is helpful to remember that in a firm commitment offering like the busybox.com offering, the underwriter buys the securities from the issuer and then resells them to investors.  In order to proceed with the closing of its purchase, Barron Chase had to have had sufficient funds in the total amount due busybox.com on hand at Fiserv, its clearing firm, and Fiserv appropriately disbursed that amount of funds.  As is typical, on June 30, 2000, busybox.com instructed Fiserv on how to disburse the funds it was to receive from the public offering, and, pursuant to a resolution of its board of directors delivered to Fiserv, ordered disbursements to the accounts of Mr. Prousalis and the principals.  Mr. Prousalis' statements from Barron Chase indicate that the funds he used to purchase his securities in the offering came from that disbursement of Barron Chase's capital at Fiserv.  As a result, the fees paid to Mr. Prousalis through the underwriting in fact paid for the securities issued by the company with no intervening loan from Barron Chase.  Indeed, no apparent purpose would have been served by a loan of the sort the Government claims was extended.

FURTHER AFFIANT SAYETH NAUGHT.

_____
STEVE THEL

I HEREBY CERTIFY that on this day personally appeared before me, an officer duly

6

authorized to administer oaths and take acknowledgments, Steve Thel, personally known by me, and acknowledged before me that the same was executed freely and voluntarily for the purpose therein expressed.

WITNESS my hand and official seal on this _____ day of March, 2004.

_____
Notary Public

My Commission Expires:

MARC DAVIDSON
NOTARY PUBLIC OF NEW JERSEY
:on Exp. Oct. 14 , 2007

7

# STEVEN SCOTT THEL

Fordham University School of Law
140 West 62nd Street
New York, N.Y. 10023
(212) 636-6852
facsimile: (212) 636-6899
email: sthel@law.fordham.edu

8 Benford Drive
Princeton Junction, N.J. 08550
(609) 799-8476
facsimile: (609) 799-7579
email: sthel@comcast.net
Born December 28, 1954

## PROFESSIONAL POSITIONS

Wormser Professor of Law, Fordham University School of Law:
Professor, since 1992; Associate Professor, 1989-92; Visiting Associate Professor, 1988-89 (on leave, 1992-93)

Columbia University: Visiting Professor, fall 2000; Adjunct Professor, spring 2002

Cornell Law School: Visiting Professor, 1992-93

University of Mississippi School of Law: Associate Professor, 1985-89 (on leave, 1988-89)

Kilpatrick & Cody, Atlanta, Georgia: Associate, 1983-85

Securities & Exchange Commission, Office of the General Counsel, Enforcement & Disclosure Policy Group: Attorney-Advisor, 1981-83

Hon. Albert J. Henderson, U.S. Court of Appeals for the Fifth Circuit, Atlanta, Georgia: Law Clerk, 1979-81

## EDUCATION

Harvard Law School
J.D., cum laude, 1979
Legal Methods Instructor, Legal Writing Tutor

North Texas State University
B.A. (economics), summa cum laude, University Honors, 1976
Teaching Assistant in Economics

Radford High School, Honolulu, Hawaii, 1972

## PUBLICATIONS

Articles:

Statutory Findings and the Regulation of Insider Trading, 50 Vand. L. Rev. 1091 (1997), reprinted in 30 Sec. L. Rev. 603 (1998)

The Regulation of Investment Management Arrangements as Securities (with Harvey Bines), 58 Ohio St. L. J. 459 (1997)

Section 12(2) of the Securities Act: Does Old Legislation Matter? 43 Ford. L. Rev. 1183 (1995)

$850,000 in 6 Minutes--The Mechanics of Securities Manipulation, 79 Cornell L. Rev. 219 (1994), reprinted in 27 Sec. L. Rev. 119 (1995)

The Promissory Basis of Past Consideration (with Edward Yorio), 78 Va. L. Rev. 1045 (1992)

The Promissory Basis of Section 90 (with Edward Yorio), 101 Yale L.J. 111 (1991), reprinted in part in Foundations of Contract Law (1994), and in A Contracts Anthology (2d ed. 1995), and in Modern American Contract Law (translated into Japanese) (forthcoming 2001)

The Genius of Section 16: Regulating the Management of Publicly Held Companies, 42 Hastings L.J. 391 (1991)

The Original Conception of Section 10(b) of the Securities Exchange Act, 42 Stan. L. Rev. 385 (1990), reprinted in 23 Sec. L. Rev. 85 (1991)

Regulation of Manipulation Under Section 10(b): Security Prices and the Text of the Securities Exchange Act, 1988 Colum. Bus. L. Rev. 359

Essays, Commentary and Reviews:

Section 20(d) of the Securities Exchange Act: Congress, the Supreme Court, the SEC and the Process of Defining Insider Trading, 69 N.C.L. Rev. 1261 (1991)

Review of Bromberg & Ribstein on Partnership by Alan Bromberg & Larry Ribstein, 45 Bus. Law. 1381 (1990)

Closing a Loophole: Insider Trading in Standardized Options, 16 Ford. Urb. L.J. 573 (1989)

Securities Law, Fifth Circuit Symposium, 34 Loy. L. Rev. 1029 (1989)

Miscellaneous:

Annual supplements to Contract Enforcement: Specific Performance and Injunctions (Little, Brown and Aspen 1992-2002)

Brief of *Amicus Curiae* North American Securities Administrators Ass'n & Law Professors in Support of Petitioner, United States v. O'Hagan, 521 U.S. 642 (1997)

Revisions of Weinstein, Korn & Miller's New York Civil Practice: CPLR §§ 204-213, 301-306, 1101-1103, 3218-3222, 8001-8012 (Matthew Bender 1991, 1992, 1993, 1994)

PROFESSIONAL ACTIVITIES AND HONORS

Public Arbitrator, New York Stock Exchange, since 1989

Public Arbitrator, National Association of Securities Dealers, since 1988

Member, Editorial Board, Villanova Journal of Law & Investment Management, since 1999

Manuscript Reviewer, Business Lawyer, since 1994

Manuscript Reviewer, Little, Brown and Company and its successor Aspen Law & Business, since 1990

Member, Subcommittee on Market Regulation and Task Force on Market Manipulation, Federal Regulation of Securities Committee, Section of Business Law, American Bar Association, since 1993

Co-director, Graduate Program, Fordham University School of Law, 1995-1998

Executive Committee, Association of American Law Schools Section on Business Associations, 1993-96

Outstanding Professor, University of Mississippi School of Law, 1988

University of Mississippi Faculty Senate, 1988

Director, Judicare of Mississippi, 1987-88

Administrative Law Judge and Consultant (securities matters), Secretary of State of the State of Mississippi, 1986-88

Faculty Advisor, Minority Law Students Conference, University of Mississippi, 1985-86

Member, State Bar of Georgia, since 1979 (currently inactive)

Member, American Bar Association, since 1990

**EXHIBIT 2**

Superseding Indictment, May 10, 2004

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

        -v-                           :         **INDICTMENT**

THOMAS T. PROUSALIS, JR.,                    :         S1 03 Cr. 1509 (DLC)

                                         :

            Defendant.                      :

- - - - - - - - - - - - - - - - - - - x

### COUNT ONE

(Conspiracy to Commit Securities, Wire and Mail Fraud)

The Grand Jury charges:

### RELEVANT PERSONS AND ENTITIES

1.   At all times relevant to this Indictment,
busybox.com Inc. ("Busybox") was a Delaware corporation which
maintained its principal place of business in California, and was
in the business of maintaining, distributing and selling
photographic and video imagery over the internet.  On or about
June 30, 2000, common stock and warrants in Busybox ("Busybox
Shares") were sold in an initial public offering ("Busybox IPO"
or "IPO"), and thereafter traded on the NASDAQ SmallCap Market
("NASDAQ") under the symbols BUSY and BUSYW, respectively.

2.   At all times relevant to this Indictment, Barron
Chase Securities Inc. ("Barron Chase") was a corporation
organized under the laws of the State of Colorado with its
principal place of business in the State of Florida.  Barron

1

Chase was a broker/dealer of securities registered with the United States Securities and Exchange Commission (the "SEC") and a member of the National Association of Securities Dealers.  One of Barron Chase's primary business activities involved providing investment banking services to corporations.  On or about June 26, 2000, Barron Chase entered into a firm commitment underwriting agreement with Busybox, and served as the lead managing underwriter for the Busybox IPO.

3.   At all times relevant to this Indictment, Robert T. Kirk, Jr. ("Kirk"), was the President, Chief Executive Officer, and majority owner of Barron Chase.  By reason of his ownership interest and status as a corporate officer, Kirk exercised effective control over Barron Chase and its management and day-to-day affairs.

4.   At all times relevant to this Indictment, THOMAS T. PROUSALIS, JR., the defendant, ("PROUSALIS") was an attorney admitted to practice in, and maintained an office in, the District of Columbia.  At all times relevant to this Indictment, PROUSALIS held himself out as a securities law expert who could provide legal advice to small capitalization companies and help raise capital for them.  At all times relevant to this Indictment, PROUSALIS served as outside counsel to Busybox and purported to provide legal advice to Busybox, including providing advice in connection with the Busybox IPO.

2

## THE SCHEME TO DEFRAUD

5.     From in or about May 2000 to in or about September
2000, THOMAS T. PROUSALIS, JR., the defendant, and Robert T.
Kirk, Jr., and others known and unknown, engaged in a scheme to
defraud Busybox and investors who purchased Busybox shares in the
IPO and in subsequent aftermarket trading.  In furtherance of
this scheme, as set forth more fully below, Kirk and PROUSALIS
sought to and did make materially false and misleading statements
and material omissions, both orally and in writing, in connection
with the Busybox IPO.  Kirk and PROUSALIS made and caused others
to make materially false statements orally and in written
materials such as the final Busybox IPO registration statement
and prospectus (collectively the "Registration Materials")
regarding, among others things: (a) the nature of the
underwriting agreement between Barron Chase and Busybox; (b) the
use of proceeds from the Busybox IPO; and (c) the fees paid to
PROUSALIS in connection with the close of the IPO.  As a result
of the foregoing misrepresentations, among others, more than 2.5
million Busybox shares were sold in connection with the IPO at $5
per share.  From their participation in the scheme, PROUSALIS
earned approximately $1.2 million, and Kirk's firm, Barron Chase,
earned approximately $1.5 million.  In or about April 2001,
Busybox was delisted by the NASDAQ.  Thereafter, in or about July
2001, Busybox filed for bankruptcy.

3

## Busybox's Retention of PROUSALIS and BARRON CHASE

6.   Starting in or about mid-1998, officers and directors of Busybox concluded that, in order for Busybox to be a viable company, it needed to raise substantial sums of money from the public.  Towards this end, in or about December 1998, Busybox retained THOMAS T. PROUSALIS, JR., the defendant.  The retainer agreement between PROUSALIS and Busybox (the "Retainer Agreement") required Busybox to make payments to PROUSALIS in connection with the occurrence of certain events, such as raising funds through the sale of Busybox securities in private placement offerings and through public offerings.  Specifically, the Retainer Agreement called for Busybox, upon the close of any IPO, to pay PROUSALIS the greater of $375,000 or 7½% of the gross proceeds of the offering.

7.   In or about April 1999, THOMAS T. PROUSALIS, JR., the defendant, arranged to have Busybox retain the services of Barron Chase to provide a variety of investment banking services. These services included raising money on behalf of Busybox through both private and public offerings of Busybox securities.

8.   From in or about April 1999 through April 2000, Robert T. Kirk, Jr. and THOMAS T. PROUSALIS, JR., the defendant, helped to raise money for Busybox through certain private offerings of Busybox shares.  During the same period, PROUSALIS and Kirk undertook steps to sell Busybox shares through a public

4

offering, including causing a registration statement and prospectus to be filed with the SEC, as well as various amendments thereto.

### The Registration Materials

9.     In connection with the anticipated Busybox IPO, THOMAS T. PROUSALIS, JR., the defendant, prepared and caused to be filed the Registration Materials, which included several amendments, the last and final version of which was filed on or about May 23, 2000.

10.     According to the Registration Materials:

a.     THOMAS T. PROUSALIS, JR., the defendant, was hired by Busybox to pass upon the validity of the securities being issued.

b.     Busybox was offering to sell to the public 2,500,000 shares of common stock at $5.00 per share, and 2,500,000 warrants at $0.125 per warrant.

c.     The total amount to be raised, before deducting expenses incurred in connection with the IPO, such as underwriting and other fees, (the "Gross Proceeds of the Offering") was $12,812,500.

d.     The estimated proceeds that Busybox expected to receive, after deducting the underwriter's fee and other IPO related expenses (the "Net Proceeds of the Offering"), was $10,559,375.

5

e.  Barron Chase, the underwriter, "agreed to purchase from Busybox an aggregate of 2,500,000 shares and common stock and 2,500,000 warrants" at a price of $4.55 per share and $0.11375 per warrant.  Furthermore, Barron Chase was "committed to purchase all of the securities offered by this prospectus."

f.  Busybox agreed to sell its shares to Barron Chase in anticipation of the IPO at an underwriter's discount of 9% and to pay Barron Chase a non-accountable expense allowance of 3% of the Gross Proceeds of the Offering.

g.  Included among the expenses to be incurred by Busybox in connection with the IPO, and to be paid with the proceeds of the offering, were "Legal Fees and Expenses" totaling $375,000.

h.  Busybox shares were expected to be eligible for listing on the NASDAQ small cap market.

11.  As set forth above, the Registration Materials filed on or about May 23, 2000 indicated that Barron Chase agreed to underwrite the Busybox IPO on a "firm commitment" basis.  In other words, Barron Chase was obligated to buy all 2,500,000 shares and warrants from Busybox and then sell those shares to the public.  Barron Chase was obligated to buy all those shares even if it was unable to immediately sell those shares in connection with the IPO.  A "firm commitment" underwriting thus differs from a so-called "best-efforts" underwriting.  In a "best

efforts" underwriting the underwriter is not obligated to buy all of the issued shares but is instead required to use only its best efforts to sell as many shares as possible.  The terms of the underwriting are material to potential investors for a number of reasons, including the fact that in a firm commitment underwriting, the terms of the underwriting assure that all shares being offered by the issuer will be purchased and therefore the issuer will raise all of the capital set forth in the prospectus to fund its future operations.

<u>The Secret Agreement Among PROUSALIS and Kirk<br>Concerning the Underwriting</u>

12.  Sometime shortly after the final version of the Registration Materials were filed, THOMAS T. PROUSALIS, JR., the defendant, learned from Robert T. Kirk, Jr., that Barron Chase was unable to find enough investors to purchase the entire offering through its own brokers, and that Barron Chase itself was unwilling to commit its own capital to purchase the balance of Busybox shares it was unable to sell to the public.  Kirk and PROUSALIS knew that Barron Chase was therefore unable and unwilling to satisfy its obligation to underwrite the Busybox IPO on a firm commitment basis.

13.  Rather than cancel the IPO or change the underwriting terms and public disclosures concerning the IPO, PROUSALIS, Kirk, and others known and unknown, secretly agreed to

7

hide the fact of Barron Chase's inability to complete the IPO and raise the full amount of proceeds disclosed in the Registration Materials from investors who participated in the IPO, and from investors who purchased Busybox shares in the aftermarket. Kirk and PROUSALIS were motivated to engage in this fraud for a number of reasons.

14. As of in or about June 2000, Barron Chase's financial condition was desperate, due in large part to disastrous proprietary trading conducted by Kirk on behalf of Barron Chase. Indeed, in the months prior to the Busybox IPO Barron Chase had been warned repeatedly by its clearing firm (the "Clearing Firm") that Barron Chase had insufficient capital to operate, and that the Clearing Firm would, if Barron Chase's financial condition did not improve, refuse, among other things, to clear trades on behalf of Barron Chase and its customers. Accordingly, Barron Chase needed the 12% or approximately $1,537,500 that it stood to reap from the close of the IPO. If the Busybox IPO did not close, Barron Chase's fee would be nothing.

15. As of in or about June 2000, THOMAS T. PROUSALIS, JR., the defendant, also had a strong interest in closing the Busybox IPO. As a result of multiple losing trades in his own personal brokerage account, by late 1998 PROUSALIS's brokerage account went from a positive balance of approximately $22 million

to a debt in excess of $3 million.  PROUSALIS failed to pay this margin, became involved in litigation as a result, and consequently incurred approximately $800,000 in legal fees.  At the same time, PROUSALIS had mortgages on homes that exceeded $2 million.  In addition, in or about November 1999, PROUSALIS had executed a promissory note for approximately $1,975,000 to purchase a Beechraft King Air C90B Aircraft.  Accordingly, given the magnitude of his financial obligations and the depletion of his savings, PROUSALIS needed the 7½% of the Gross Proceeds of the Offering, or approximately $960,000, that he stood to reap from the close of the Busybox IPO.  If the Busybox IPO did not close, PROUSALIS's fee in connection with the IPO would be nothing.

16.  In order to close the Busybox IPO and make up the shortfall of over $2 million of Busybox shares for which Barron Chase was unable to find interested purchasers, THOMAS T. PROUSALIS, JR., the defendant, Robert T. Kirk, Jr., and others known and unknown, agreed to use the IPO proceeds to pay PROUSALIS's fee, and to purchase IPO shares on behalf of certain Busybox officers and directors.

### The Busybox IPO

17.  On or about June 26, 2000, Robert T. Kirk, Jr., on behalf of Barron Chase, executed the Underwriting Agreement between Barron Chase and Busybox, in which Barron Chase agreed to

9

underwrite the Busybox IPO on a "firm commitment basis." By that time, however, as Kirk well knew, but failed to disclose to Busybox, Barron Chase was unwilling and unable to fulfill its obligations to conduct a firm commitment underwriting. Likewise, THOMAS T. PROUSALIS, JR., the defendant, advised Busybox to enter into the Underwriting Agreement and, in violation of his fiduciary duties as Busybox's counsel, failed to disclose to Busybox that PROUSALIS knew Barron Chase could not and would not perform its obligations. Nevertheless, later that day, the Busybox IPO became effective, and Busybox shares were listed on the NASDAQ Smallcap Market and became available for trading on the open market.

18.   On or about June 28, 2000, after the Underwriting Agreement was signed and Busybox shares were being publicly traded, THOMAS T. PROUSALIS, JR., the defendant, informed officers and directors of Busybox that despite Barron Chase's agreement to underwrite the Busybox IPO on a firm commitment basis, Barron Chase could not follow through on its commitment; specifically, Barron Chase was unable to sell approximately 600,000 Busybox shares. PROUSALIS indicated that he had an outside investor who could purchase approximately 100,000 Busybox shares for approximately $500,000. PROUSALIS suggested that, in order to complete the IPO, he would take his fee in Busybox shares - to be funded by IPO proceeds - and the officers and

10

directors should take future bonuses in the form of Busybox shares – also to be funded with IPO proceeds.

19. As THOMAS T. PROUSALIS, JR., the defendant, and Robert T. Kirk, Jr. well knew, this use of more than $2.5 million of the IPO proceeds was nowhere disclosed in the Registration Materials. When questioned about the legality of this arrangement by Busybox officers, PROUSALIS assured them – although he knew the contrary to be true – that this arrangement was entirely lawful. Indeed, PROUSALIS informed the Busybox officers that he had spoken with an SEC examiner to confirm that this arrangement was proper and that no additional disclosures needed to be made. In truth and in fact, PROUSALIS had not informed anyone at the SEC the details of his and Kirk's plan. PROUSALIS and Kirk well knew that, had they done so, the SEC would not have permitted the Busybox IPO to go forward.

20. As THOMAS T. PROUSALIS, JR., the defendant, also well knew, it was material to investors that Busybox shares, as disclosed in the Registration Materials, would be traded on the NASDAQ. However, PROUSALIS was aware that, had he properly disclosed his fee in the Registration Materials, Busybox would would not have met the pertinent NASDAQ listing requirement because it would have had insufficient net tangible assets, and that NASDAQ would not have allowed Busybox shares to be traded on its market.

## The Distribution of the IPO Proceeds

21.   In order to effectuate the arrangement set forth above, THOMAS T. PROUSALIS, JR., the defendant, and certain Busybox officers opened personal brokerage accounts at Barron Chase (the "Barron Chase Accounts").   The Barron Chase Accounts were not margin accounts, and all opened with zero balances. Robert T. Kirk, Jr. opened the Barron Chase Accounts on behalf of PROUSALIS and the others, and was listed on the accounts as the "Investment Consultant."   PROUSALIS and Kirk knew that the Clearing Firm would not release the IPO proceeds for distribution until all of the IPO proceeds were collected.

22.   On or about June 30, 2000, all of the Barron Chase Accounts reflected large purchases of Busybox IPO shares. However, because the Barron Chase Accounts had no previous balances and were not margin accounts, they simultaneously reflected large negative balances equal to the price of Busybox shares purchased.   For example, on or about June 30, 2000, the Barron Chase account of THOMAS T. PROUSALIS reflected a purchase of 245,000 Busybox shares and 245,000 warrants, for a total price of $1,255,625.00.   However, PROUSALIS had no cash to fund this purchase, and thus the account reflected a negative balance of $1,255,625.00.   The Barron Chase Accounts of the officers who received IPO shares pursuant to PROUSALIS and Kirk's plan reflected similar activity that day.

12

23.  On the same day, on or about June 30, 2000, PROUSALIS caused Busybox to authorize the Clearing Firm to use IPO proceeds to fund the purchase of IPO shares on behalf of PROUSALIS and the Busybox officers, and to transfer those funds to their Barron Chase Accounts.

24.  At the same time, on or about June 30, 2000, the Busybox IPO purportedly closed.  In accordance with Kirk's and PROUSALIS's instructions, on or about July 3, 2000, the Clearing Firm distributed the Busybox IPO proceeds.  Approximately $2.5 million of the proceeds went to accounts in the name of PROUSALIS and various Busybox officers, thereby offsetting the negative balances in their Barron Chase Accounts and funding the purchase of the Busybox IPO shares.  PROUSALIS himself received approximately $1,255,625.00.

25.  For its work in connection with the IPO, Barron Chase, Kirk's firm, received its 9% underwriter's discount and 3% expense allowance, for total compensation of approximately $1,537,500.

26.  At no time did any of the officers of Busybox who received IPO shares sell them.  On the other hand, THOMAS T. PROUSALIS, JR., the defendant, sold his shares in or about September 2000 for approximately $750,000.  Busybox was delisted by the NASDAQ in or about April 2001 and filed for bankruptcy protection sometime thereafter.

13

## The Materially False and Misleading Statements
## in the Registration Materials

27.  As THOMAS T. PROUSALIS, JR., the defendant, and Robert T. Kirk, Jr. well knew, the Registration Materials contained materially false and misleading statements, and material omissions, about, among other things:

a.  PROUSALIS's fee, which, according to the Registration Materials filed with the SEC, was $375,000.  In truth and in fact, as PROUSALIS well knew, his fee in connection with the close of the IPO was the greater of $375,000 or 7½% of the gross proceeds of the offering.  Because the offering was for 2.5 million shares and 2.5 million warrants at $5 and $0.125 respectively, Busybox was supposed to pay PROUSALIS approximately $960,000.  In fact, PROUSALIS received a fee of approximately $1,255,625 -- approximately $880,000 more than was disclosed in the Registration Materials;

b.  the nature of the underwriting agreement, which, according to the Registration Materials, was being done on a firm commitment basis by Barron Chase.  As PROUSALIS and Kirk well knew, Barron Chase was unable to, and did not in fact, conduct the underwriting on a firm commitment basis;

c.  the use of the IPO proceeds, about which the Registration Materials omitted entirely any mention that PROUSALIS and officers of Busybox were receiving funds to purchase IPO shares.  As PROUSALIS and Kirk well knew, the

14

Registration Materials nowhere indicated that the IPO proceeds were going to be used to purchase hundreds of thousands of shares on behalf of Busybox officers, and to purchase approximately 245,000 shares and warrants on behalf of PROUSALIS.  PROUSALIS and Kirk well knew that as a result of Barron Chase's inability to fulfill its firm commitment, and their decision to use IPO proceeds to pay for the purchase of shares for PROUSALIS and others, the Net Proceeds of the Offering to Busybox would be almost $2 million less than the $10.5 million disclosed in the Registration Materials;

d.  the related party transactions between the officers and Busybox - which are required to be disclosed by the SEC and the applicable rules and regulations - in which the officers agreed to take stock in order to complete the IPO, and which were nowhere mentioned in the Registration Materials; and

e.  the fact that, as a result of the undisclosed plan to have officers purchase IPO shares with offering proceeds, the ownership stake of the officers in Busybox that was disclosed in the Registration Materials was materially false and misleading.

## The Sale of Busybox Shares to the Public

28.  As set forth above, THOMAS T. PROUSALIS, JR., the defendant, and Robert T. Kirk, Jr. knew full well that the Registration Materials contained materially false and misleading

statements.  Kirk nevertheless caused brokers at Barron Chase to offer and sell Busybox IPO securities knowing that investors – including one or more located in the Southern District of New York – would receive copies of the Registration Materials containing the misrepresentations set forth above.  PROUSALIS, likewise, as an experienced securities law practitioner, knew that potential investors – including one or more located in the Southern District of New York – would receive copies of the Registration Materials containing the misrepresentations set forth above.  Furthermore, as both Kirk and PROUSALIS well knew and intended, victim investors who purchased Busybox securities in aftermarket trading would and did rely upon false statements in the Registration Materials.

## THE CONSPIRACY

29.  From in or about May 2000 until in or about September 2000, in the Southern District of New York and elsewhere, THOMAS T. PROUSALIS, JR., the defendant, and Robert T. Kirk, Jr. together with others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, (a) to commit securities fraud, in violation of Sections 78j(b) and 78ff of Title 15, United States Code, and Title 17, Code of Federal Regulations, Section 240.10b-5; (b) wire fraud, in violation of Title 18, United States Code,

16

Sections 1343 and 1346; and (c) mail fraud, in violation of Title 18, United States Code, Sections 1341 and 1346.

## OBJECTS OF THE CONSPIRACY

### Securities Fraud

30.  It was a part and an object of the conspiracy that THOMAS T. PROUSALIS, JR., the defendant, and Robert T. Kirk, Jr. and others known and unknown, unlawfully, willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, would and did use and employ manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### Wire Fraud

31.  It was further a part and an object of the conspiracy that THOMAS T. PROUSALIS, JR., the defendant, and

17

Robert T. Kirk, Jr. and others known and unknown, unlawfully,
willfully, and knowingly, having devised and intending to devise
a scheme and artifice to defraud, and for obtaining money and
property by means of false and fraudulent pretenses,
representations, and promises, would and did transmit and cause
to be transmitted by means of wire communication in interstate
and foreign commerce, writings, signs, signals, pictures, and
sounds for the purpose of executing such scheme and artifice, in
violation of Title 18, United States Code, Sections 1343 and
1346.

### Mail Fraud

32.   It was further a part and an object of the
conspiracy that THOMAS T. PROUSALIS, JR., the defendant, and
Robert T. Kirk, Jr., and others known and unknown, unlawfully,
willfully, knowingly, having devised and intending to devise a
scheme and artifice to defraud, and for obtaining money and
property by means of false and fraudulent pretenses,
representations, and promises, for the purpose of executing such
scheme and artifice and attempting to do so, would and did place
in a post office and authorized depository for mail matter,
matters and things to be sent and delivered by the Postal
Service, and would and did deposit and cause to be deposited
matters and things, to be sent and delivered by private and
commercial interstate carriers, and would and did take and

18

receive therefrom such matters and things and knowingly would and did cause to be delivered by mail and such carriers according to direction thereon, such matters and things, all in violation of Title 18, United States Code, Sections 1341 and 1346.

### MEANS AND METHODS OF THE CONSPIRACY

33. Among the means and methods by which THOMAS T. PROUSALIS, JR., the defendant, and Robert T. Kirk, Jr., together with others known and unknown, would and did carry out the conspiracy were the following:

a. PROUSALIS prepared and caused to be filed the Registration Materials with the SEC knowing that they contained materially false and misleading statements.

b. Kirk and PROUSALIS caused accounts at Barron Chase to be opened on behalf of PROUSALIS and certain Busybox officers and directors.

c. Kirk and PROUSALIS agreed to have proceeds of the Busybox IPO deposited into accounts in the name of PROUSALIS and various Busybox officers and directors.

d. Kirk executed the Underwriting Agreement — knowing that Barron Chase was unable to fulfill its terms — which Kirk knew was going to be attached to the Registration Materials and without which the SEC would not have permitted the Busybox IPO to become effective.

e.  Kirk authorized the distribution of the IPO proceeds, including the distribution of approximately $2.3 million to accounts in the name of PROUSALIS and various officers and directors of Busybox to fund the purchase of IPO shares, knowing that that use of the IPO proceeds was not disclosed in the Registration Materials.

f.  In order to further conceal the use of IPO proceeds and his failure to disclose fully his fee in the Registration Materials, PROUSALIS failed to file forms with the SEC – as he was required to do as an acquirer or seller of more than 10% of the outstanding shares of Busybox – when he acquired and sold his Busybox IPO shares.

g.  PROUSALIS issued an "opinion letter" – which was a condition precedent to the close of the IPO – in which he stated in sum and substance that the Registration Materials contained no materially false statements or material omissions when he knew the contrary to be true.

h.  PROUSALIS falsely represented to Busybox officers and directors that he had disclosed to the SEC the arrangement to use IPO proceeds to purchase shares for PROUSALIS and certain officers and that, based on the direction he received from the SEC, this arrangement did not need to be disclosed in the Registration Materials.

i.   PROUSALIS concealed the size of his fee from the NASDAQ so that it would appear that Busybox met the listing requirements for the NASDAQ.

## OVERT ACTS

34.   In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   In or about late June 2000, THOMAS T. PROUSALIS, JR., the defendant, communicated with the SEC and requested that the Registration Materials filed on or about May 23, 2000 with the SEC be deemed effective.

b.   On or about June 26, 2000, Robert T. Kirk, Jr. executed the Underwriting Agreement.

c.   On or about June 26, 2000, PROUSALIS sent a letter by fax and mail from Washington, D.C. to New York, New York, in connection with the Busybox IPO.

d.   On or about June 27, 2000, Barron Chase sent a fax from Florida to New York, New York regarding distribution information for Busybox securities.

e.   On or about June 27, 2000, public trading in Busybox securities began.

f.  On or about June 28, 2000, while in Washington, D.C., PROUSALIS spoke on the phone with an officer of Busybox in Maryland.

g.  On or about July 28, 2000, a Barron Chase Account statement reflecting the transfer of IPO proceeds into the account of one of the Busybox officers was sent in the mail from Colorado to New York, New York.

h.  On or about June 30, 2000, an investor located in Westchester County, New York, purchased Busybox securities from Barron Chase.

i.  On or about June 30, 2000, a fax was sent from Barron Chase to Barron Chase's clearing firm authorizing the release of the IPO proceeds to Busybox.

j.  On or about July 3, 2000, the IPO proceeds were distributed by Barron Chase to Busybox.

k.  In or about September 2000, PROUSALIS sold Busybox securities worth approximately $750,000.

(Title 18, United States Code, Section 371).

## COUNT TWO

(Securities Fraud)

The Grand Jury further charges:

35.  The allegations contained in paragraphs 1 through 28, and 33 and 34 of this Indictment are realleged and incorporated as if fully set forth herein.

36.  From in or about May 2000 to in or about September 2000, in the Southern District of New York and

22

elsewhere, THOMAS T. PROUSALIS, JR., the defendant, unlawfully, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges did use and employ manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud upon purchasers and sellers of Busybox common stock.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2).

## COUNT THREE

(Failure to Disclose Interest of Counsel)

37.   The allegations contained in paragraphs 1 through 28, and 33 and 34 of this Indictment are realleged and incorporated as if fully set forth herein.

38.   From in or about May 2000 through in or about July 2000, in the Southern District of New York and elsewhere, THOMAS T. PROUSALIS, JR., the defendant, unlawfully, willfully and knowingly violated a provision of the Securities Act of 1933, and the rules and regulations promulgated by the Securities and

Exchange Commission under authority thereof, by failing to disclose, regarding counsel in connection with an offering under Regulation S-B, (a) the contingent basis on which the counsel was hired, (b) the direct and indirect interest, exceeding $50,000, in the small business issuer that the counsel was to receive, and (c) the status of the counsel as a promoter, underwriter, voting trustee, director, officer and employee, of the small business issuer, in violation of Title 17, Code of Federal Regulations, Section 228.509, to wit, THOMAS T. PROUSALIS, JR., the defendant, filed and caused to be filed with the SEC the Busybox Registration Materials: naming PROUSALIS as counsel who rendered an opinion on the validity of the Busybox securities being offered to the public; failing to disclose that PROUSALIS would receive legal fees for his work in connection with the Busybox IPO only if the Busybox IPO closed; and failing to disclose that PROUSALIS was receiving these fees in Busybox securities.

(Title 15, United States Code, Section 77x; Title 17, Code of Federal Regulations, Section 228.509; and Title 18, United States Code, Section 2).

_Timothy C. Stockton_
Foreperson

_David N. Kelley_
DAVID N. KELLEY
UNITED STATES ATTORNEY

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

THOMAS T. PROUSALIS, JR.,

Defendant.

### INDICTMENT

S1 03 Cr. 1509 (DLC)

18 U.S.C. §§ 2, 371, 1341, 1343 and 1346;
15 U.S.C. §§ 78j(b), 77x, and 78ff; 17
CFR §§ 228.509 and 240.10b-5.

DAVID N. KELLEY
United States Attorney

*(signature)*

**EXHIBIT 3**

Arraignment Hearing Transcript, May 12, 2004
(Page 6)

45C8PROC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4          v.               03 Cr. 1509 (DLC)

5   THOMAS T. PROUSALIS, JR.,

6          Defendant.

7   ------------------------------x

8                      May 12, 2004
                      12:40 p.m.
9

10   Before:

11             HON. DENISE COTE

12                     District Judge

13               APPEARANCES

14   DAVID N. KELLEY
        United States Attorney for the
15       Southern District of New York
   STEVEN GLASER
16   DIANE GUJARATI
        Assistant United States Attorneys

17   DAVID E. KENNER
   ALVIN E. ENTIN
18        Attorneys for Defendant

19

20

21

22

23

24

25

45C8PROC

1    of the 1933 Act.

2            THE COURT:  How is this count related, if at all, to

3    the original indictment?

4            MR. GLASER:  It's substantially related in that there

5    were previous allegations that Mr. Prousalis willfully failed

6    to disclose the material terms of his retainer agreement in the

7    registration statement.  This is an additional count which

8    pertains to those allegations.

9            THE COURT:  The same conduct that was in the original

10   indictment?

11           MR. GLASER:  Exact same conduct.

12           THE COURT:  This again concerns the Busy Box IPO and

13   the registration statement in connection with the Busy Box IPO?

14           MR. GLASER:  That is correct, your Honor.

15           THE COURT:  Again, from the original indictment?

16           MR. GLASER:  That is correct, your Honor.

17           There is virtually no changes to the allegations, the

18   factual allegations in the superseding indictment.  And all of

19   the charges in the superseding indictment relate to the IPO for

20   the Busy Box June 2000 IPO which was charged in the original

21   indictment.

22           THE COURT:  Thank you.

23           So let's schedule motions to dismiss.  How much time

24   do you wish, counsel, to make those motions?

25           MR. KENNER:  I would like ten days, your Honor.

**EXHIBIT 4**

Plea Agreement, June 15, 2004



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 15, 2004

<u>By Hand</u>

David Kenner, Esq.
2 West Street
New York, New York 10004

        Re:  **United States v. Thomas T. Prousalis, Jr.**
             **S1 03 Cr. 1509 (DLC)**

Dear Mr. Kenner:

        On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept guilty pleas from THOMAS T. PROUSALIS, JR. ("the defendant") to Counts One, Two, and Three of the above-referenced Indictment.

        Count One charges the defendant with conspiracy to commit securities fraud, mail fraud, and wire fraud, in violation of Title 18, United States Code, Section 371.  Count One carries a maximum sentence of five years' imprisonment; a maximum term of three years' supervised release; a maximum fine, pursuant to Title 18, United States Code, Section 3571 of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense; and a mandatory special assessment of $100.

        Count Two charges the defendant with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.  Count Two carries a maximum sentence of ten years' imprisonment; a maximum term of three years' supervised release; a maximum fine, pursuant to Title 18, United States Code, Section

A33

EXHIBIT
A-3

10/2002

3571 of the greatest of $1,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense; and a mandatory special assessment of $100.

Count Three charges the defendant with failure to disclose interest of counsel, in violation of Title 15, United States Code, Section 77x, and Title 17, Code of Federal Regulations, Section 228.509. Count Three carries a maximum sentence of five years' imprisonment; a maximum term of three years' supervised release; a maximum fine, pursuant to Title 18, United States Code, Section 3571 of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense; and a mandatory special assessment of $100.

The total maximum term of imprisonment under Counts One, Two, and Three is twenty years.

In addition to the foregoing, the Court must order restitution in accordance with Sections 3663, 3663A and 3664 of Title 18, United States Code.

In consideration of his plea to the above offense[s], the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations as to which this Office cannot, and does not, make any agreement) for his participation in the scheme to cause false statements and knowing misrepresentations to be made to investors in the initial public offering of busybox.com Inc., as charged in Counts One, Two, and Three of the Indictment. In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

In consideration of the foregoing and pursuant to Sentencing Guidelines Section 6B1.4, the parties hereby stipulate to the following:

A.    Offense Level

1.    The Guidelines provisions in effect as of November 1, 1998, apply to this case because those provisions result in a lower Guidelines range than the provisions in effect as of November 1, 2002. *See* U.S.S.G. § 1B1.11(b)(1).

A3Y

2.    Pursuant to U.S.S.G. § 2F1.1(a), the base offense level is six.

3.    Pursuant to U.S.S.G. § 2F1.1(b)(1)(P), because the loss exceeded $10,000,000 but did not exceed $20,000,000, the base offense level is increased by fifteen offense levels.

4.    Pursuant to U.S.S.G. § 2F1.1(b)(2)(A), because the offense involved more than minimal planning, the base offense level is increased further by two offense levels.

5.    Pursuant to U.S.S.G. § 3B1.3, because the defendant abused a position of trust and/or used special skills, the base offense level is increased further by two offense levels.

6.    Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to § 3E1.1(a), U.S.S.G.  Because the defendant failed to give timely notice of his intention to enter a plea of guilty, did not permit the Government to avoid preparing for, and conducting, trial, and did not permit the Court to allocate its resources efficiently, no additional reduction is warranted pursuant to § 3E1.1(b), U.S.S.G.

In accordance with the above, the applicable Guidelines offense level is 23.

B.    Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has no prior criminal history.  Accordingly, the defendant's Criminal History Category is I.

C.    Sentencing Range

Based upon the calculations set forth above, the defendant's stipulated sentencing Guidelines range is 46 to 57 months.  In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to § 5E1.2.  At Guidelines level 23, the applicable fine range is $10,000 to $1,000,000.

The parties agree that neither a downward nor an upward departure from the Sentencing range set forth above is warranted. Accordingly, neither party will seek such a departure or seek any

adjustment not set forth herein.  Nor will either party suggest
that the Probation Department consider such a departure or
adjustment, or suggest that the Court sua sponte consider such a
departure or adjustment.

Except as provided in any written Proffer Agreement(s)
that may have been entered into between this Office and the
defendant, nothing in this agreement limits the right of the
parties (i) to present to the Probation Department or the Court
any facts relevant to sentencing; (ii) to make any arguments
regarding where within the Sentencing range set forth above (or
such other range as the Court may determine) the defendant should
be sentenced; (iii) to seek an appropriately adjusted Sentencing
range if it is determined based upon new information that the
defendant's criminal history category is different from that set
forth above.  Nothing in this agreement limits the right of the
Government to seek denial of the adjustment for acceptance of
responsibility, see U.S.S.G. § 3E1.1, and/or imposition of an
adjustment for obstruction of justice, see U.S.S.G. § 3C1.1,
regardless of any stipulation set forth above, should the
defendant move to withdraw his guilty plea once it is entered, or
should it be determined that the defendant has either (i) engaged
in conduct, unknown to the Government at the time of the signing
of this Agreement, that constitutes obstruction of justice or
(ii) committed another crime after signing this agreement.

It is understood that pursuant to Sentencing Guidelines §
6B1.4(d), neither the Probation Department nor the Court is bound
by the above Guidelines stipulation, either as to questions of
fact or as to the determination of the proper Guidelines to apply
to the facts.  In the event that the Probation Department or the
Court contemplates any Guidelines adjustments, departures, or
calculations different from those stipulated to above, the
parties reserve the right to answer any inquiries and to make all
appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the
defendant is determined solely by the Court.  This Office cannot,
and does not, make any promise or representation as to what
sentence the defendant will receive.  Moreover, it is understood
that the defendant will have no right to withdraw his plea of
guilty should the sentence imposed by the Court be outside the
Guidelines range set forth above.

It is further agreed (i) that the defendant will not file
a direct appeal, nor litigate under Title 28, United States Code,
Section 2255 and/or Section 2241, any sentence within or below
the stipulated Sentencing range set forth above and (ii) that the

4

A36

Government will not appeal any sentence within or above the stipulated Sentencing range.  This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein.  Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty.  By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, Jencks Act material, exculpatory material pursuant to Brady v. Maryland, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, and impeachment material pursuant to Giglio v. United States, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

It is further agreed that should any of the convictions following defendant's pleas of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution.  It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and defendant.  No additional understandings, promises, or conditions have been entered into

A37

10/2002

other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

DAVID N. KELLEY
United States Attorney

By: _____
STEVEN R. GLASER/DIANE GUJARATI
Assistant United States Attorneys
(212) 637-2413/2507

APPROVED:

_____
MEI LIN KWAN-GETT
Deputy Chief, Criminal Division

AGREED AND CONSENTED TO:

_____
THOMAS T. PROUSALIS, JR.

_____
DATE          June 15, 2004

APPROVED:

_____
DAVID KENNER
Attorney for Defendant

_____
DATE          6-15-04

10/2002

A38

**EXHIBIT 5**

Plea Hearing Transcript, June 15, 2004
(Pages 8-14)

1

46F6PROP

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                        S1 03 Cr. 1509 (DLC)

 5   THOMAS T. PROUSALIS, JR.,

 6              Defendant.

 7   ------------------------------x

                                         New York, N.Y.
 8                                       June 15, 2004
                                         2:30 p.m.
 9

10
     Before:
11
                     HON. DENISE COTE,
12
                                         District Judge
13

14                        APPEARANCES

15   DAVID N. KELLEY
          United States Attorney for the
16        Southern District of New York
     STEVEN GLASER
17   DIANE GUJARATI
          Assistant United States Attorneys
18
     DAVID E. KENNER
19        Attorneys for Defendant
          -and-
20   ENTIN DELLA FERA & GREENBERG
     BY:  ALVIN E. ENTIN
21

22

23

24   ALSO PRESENT:   DAVID MAKOL, FBI
                      EMIL BOVE, Paralegal
25

               SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

46F6PROP                          Plea

1              THE DEFENDANT:  Yes, I do.

2              THE COURT:  I want to make sure you understand the

3    charges against you that are contained in this indictment.  I

4    take it you have yourself studied this indictment already?

5              THE DEFENDANT:  Yes, ma'am, I have read it.

6              THE COURT:  Count one, a conspiracy count.  At its

7    heart a conspiracy charge is a charge that you and others

8    agreed together to violate the law.  This conspiracy charge

9    charges you agreed with others to violate three separate laws:

10   The law against securities fraud, the law against wire fraud,

11   and the law against mail fraud.

12             Let me describe what securities fraud is first.  It is

13   a crime under our securities laws to willingly and knowingly

14   use the means and instrumentalities of interstate commerce, the

15   mails, or the facilities of the national securities exchanges,

16   either directly or indirectly, in connection with the

17   following:  Using or employing a manipulative or deceptive

18   device or contrivance by first employing devices, schemes or

19   artifices to defraud, or second, making untrue statements of

20   material facts or omitting to state material facts necessary in

21   order to make statements made in the light of the circumstances

22   under which they were made not misleading, or three, engaging

23   in acts, practices or courses of business which operate as a

24   fraud and a deceit upon a person all of that in connection with

25   the purchase or sale of securities.

46F6PROP                    Plea

1        Do you understand that those are the elements of

2   securities fraud?

3        THE DEFENDANT:  I do.

4        THE COURT:  Let me describe the crime of wire fraud to

5   you.  Wire fraud is committed by someone who willingly and

6   knowingly devises or intends to devise a scheme or artifice to

7   defraud or for obtaining money or property by means of false or

8   fraudulent pretenses, representations or promises.  And in

9   connection with that does transmit or cause to be transmitted

10  by means of wire communication in interstate commerce writings,

11  signs, signals, pictures or sounds for the purpose of executing

12  such a extreme or artifice to defraud.

13        Do you understand those are the elements of wire

14  fraud?

15        THE DEFENDANT:  I do.

16        THE COURT:  Let me describe again the elements of mail

17  fraud.  They are the same as the elements of wire fraud except

18  with respect to the manner in which communications are made.

19  The crime of mail fraud is committed when someone willingly and

20  knowingly devises or intends to devise a scheme or artifice to

21  defraud or to obtain money or property by means of false or

22  fraudulent pretenses, representations or promises.  And for the

23  purpose of executing such scheme or artifice or attempting to

24  do so, does place in a post office or authorized depository for

25  mail matter matters and things to be sent or delivered by the

46F6PROP                    Plea

1   postal service or deposits or causes to be deposited such

2   matters or things to be sent or delivered by private or

3   commercial interstate carriers or takes or receives their from

4   such matters or things or knowingly causes to be delivered by

5   mail or such carriers according to directions on them such

6   matters or things.

7           Those are the elements of the mail fraud charge; do

8   you understand that?

9           THE DEFENDANT:  I do.

10          THE COURT:  Let me return generally to describe the

11  crime of conspiracy contained in Count One.  The illegal

12  agreement here is charged to have existed between May 2000 and

13  on or about September of 2000.  And to have had as its objects,

14  as I described, a violations of security fraud laws, wire fraud

15  laws, mail fraud laws, as I have described.  And it charges

16  that the conspiracy is a charge that you along with others did

17  agree to violate those statutes.  The conspiracy count concerns

18  the Busybox IPO and actions taken in connection with that and I

19  want to give you a description of acts that you are charged

20  with having taken in order to further the crime charged in

21  Count One, the conspiracy.

22          Let me give you an example.  It is charged that in

23  late June 2000 you communicated with the SEC and requested that

24  the registration materials filed on or about May 23, 2000 with

25  the SEC be deemed effective.  Do you understand that that is an

46F6PROP                    Plea

1   example of something you have been charged with doing to

2   further the conspiracy charged in Count One?

3        THE DEFENDANT:  I do.

4        THE COURT:  I am about to move onto Count Two.  Do you

5   understand the charge you are charged with in Count One?

6        THE DEFENDANT:  Yes, ma'am.

7        THE COURT:  Let me turn to Count Two, the securities

8   fraud charge.  I already described the elements of securities

9   fraud to you, but let me describe the specifics here.  It is

10  charged from on or about May 2000 to in or about September 2000

11  in the Southern District of New York and elsewhere, you

12  willingly and knowingly committed the crime of securities fraud

13  upon purchasers and sellers of Busybox common stock.

14       Do you understand that is what you are charged with in

15  Count Two?

16       THE DEFENDANT:  I do.

17       THE COURT:  Count Three charges you with engaging in a

18  crime between May 2000 and July 2000 again in the Southern

19  District of New York and elsewhere and specifically this one,

20  this crime charged you with willingly and knowingly violating a

21  provision of the Securities Act of 1933 and the rules and

22  regulations promulgated by the SEC by failing to disclose

23  information concerning the following issue:  Failing to

24  disclose information regarding counsel in connection with an

25  offering under Regulation SB, and again this concerns the

46F6PROP                    Plea

1    Busybox IPO, and specifically it charges that you failed to

2    disclose the contingent basis on which counsel was hired or the

3    direct or indirect interest exceeding $50,000 in the small

4    business issuer that the counsel was to receive or the status

5    of counsel as a promoter, underwriter, voting trustee, director

6    officer or employee of the small business issuer all of that

7    being in violation of the law.

8              Do you understand that is part of the charge in Count

9    Three?

10             THE DEFENDANT:  I do.

11             THE COURT:  The specifics here are that you filed and

12   caused to be filed with the SEC the Busybox registration

13   materials naming yourself as counsel, that is as a person who

14   had rendered an opinion on the validity of the Busybox

15   securities being offered to the public, and that you failed to

16   disclose that you would receive legal fees for your work in

17   connection with the IPO only if the Busybox IPO closed or that

18   you failed to disclose that you were receiving these fees in

19   Busybox securities.

20             Do you understand that is the charge in Count Three?

21             THE DEFENDANT:  Yes, I do.

22             THE COURT:  Each of these crimes is alleged to have

23   occurred at least in part in the Southern District of New York,

24   which includes among other locations Manhattan and the Bronx.

25             Do you understand that?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

46F6PROP                          Plea

1              THE DEFENDANT:  I do.

2              THE COURT:  Let me describe the penalties that apply

3      to each of these crimes.  Count One, the conspiracy count,

4      carries a maximum of imprisonment of five years; a maximum fine

5      of $250,000 or twice the gross gain or loss; a maximum term of

6      supervised release and a mandatory special assessment of $100.

7              Do you understand that?

8              THE DEFENDANT:  I do.

9              THE COURT:  Count Three carries the same penalty.

10             Do you understand that?

11             MR. GLASER:  Your Honor, I apologize for the

12     interruption.  Your Honor indicated that there was a maximum

13     term of supervised release.  I might have missed it, but I

14     didn't hear your Honor say what that term of supervised release

15     would be.

16             THE COURT:  Oh, thank you very much.  The maximum term

17     of supervised release is three years.

18             The maximum term of supervised release under Count

19     Three, the same penalties apply as I have described for Count

20     One.

21             Do you understand that?

22             THE DEFENDANT:  Yes, I do.

23             THE COURT:  For Count Two, the maximum term of

24     imprisonment is 10 years; the maximum term of supervised

25     release is three years; the maximum fine is the greater of one

46F6PROP                    Plea

1    million dollars or twice the gross gain or twice the gross

2    loss; and in addition you are required to pay a special

3    assessment of $100.

4              Do you understand that?

5              THE DEFENDANT:  I do.

6              THE COURT:  Are you a citizen of this country?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  Supervised release means that you will be

9    subject to monitoring when released from prison.  There are

10   terms of supervised release with which you must apply.  If you

11   do not comply with them, you could be returned to prison

12   without a jury trial.  You will be given no credit for any time

13   you already spent in prison and no credit for any time you

14   already spent on postrelease supervision.

15             Do you understand that?

16             THE DEFENDANT:  I do.

17             THE COURT:  Also, it may very well be a requirement at

18   the time of sentence that you pay restitution.

19             Do you understand that?

20             THE DEFENDANT:  I do.

21             THE COURT:  All told then the maximum term of

22   imprisonment that could be imposed upon you based on the plea

23   of guilty to these three counts is 20 years in prison.

24             Do you understand that?

25             THE DEFENDANT:  I do.

**EXHIBIT 6**

Judgment, October 28, 2004

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

SOUTHERN    District of    NEW YORK

UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE**

V.

THOMAS T. PROUSALIS, JR.

**DOC #55**

Case Number:    1:S1 03CR01509-01(DLC)

USM Number:    47351-083

David E. Kenner
Defendant's Attorney

**THE DEFENDANT:**

X   pleaded guilty to count(s)    1, 2 and 3

DOCKETED A #04, 2050

A JUDGMENT

☐   pleaded nolo contendere to count(s)
which was accepted by the court.

☐   was found guilty on count(s)
after a plea of not guilty.

ON 11/10/04

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 371 | Conspiracy to commit securities fraud, wire fraud and mail fraud | 09-30-00 | 1 |
| 15 USC § 78j(b) and 78ff | Securities fraud | 09-30-00 | 2 |
| 15 USC § 77xx | Failure to disclose interest of counsel | 07-31-00 | 3 |

     The defendant is sentenced as provided in pages 2 through   __6__   of this judgment. The sentence is imposed pursuant the Sentencing Reform Act of 1984.

☐   The defendant has been found not guilty on count(s)

X   Count(s)    in underlying Indictment    ☐ is   X are   dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

October 28, 2004
Date of Imposition of Judgment

Signature of Judge

Denise Cote, U.S. District Judge
Name and Title of Judge

Date    November 1, 2004

MICROFILM
NOV - 4 2004
-9:00 AM

U.S. DISTRICT COURT
FILED
NOV - 1 2004
S.D. OF N.Y.

Financial Litigation Unit-NYS
NOV 10 2004
Received on

AO 245B     (Rev. 12/03) Judgment in Criminal Case
            Sheet 2 — Imprisonment

Judgment — Page   2   of   6  

DEFENDANT:      THOMAS T. PROUSALIS, JR.
CASE NUMBER:    1:S1 03CR01509-01(DLC)

## IMPRISONMENT

        The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
total term of:    57 months.

X  The court makes the following recommendations to the Bureau of Prisons:
     That the defendant be designated to a facility as close as possible to the Central District of California.

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at  _____  ☐ a.m.  ☐ p.m.  on  _____.

    ☐  as notified by the United States Marshal.

X  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    X  before 2 p.m. on   January 7, 2005  .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered   _____  to  _____

a _____ , with a certified copy of this judgment.

_____

UNITED STATES MARSHAL

By _____

DEPUTY UNITED STATES MARSHAL

AO 245B     (Rev. 12/03) Judgment in a Criminal Case
            Sheet 3 — Supervised Release

DEFENDANT:      THOMAS T. PROUSALIS, JR.
CASE NUMBER:    1:S1 03CR01509-01(DLC)

Judgment—Page ___3___ of ___6___

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :     3 years

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

X     The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X     The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☐     The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐     The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐     The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
            Sheet 3A — Supervised Release

Judgment—Page ___4___ of ___6___

DEFENDANT:          THOMAS T. PROUSALIS, JR.
CASE NUMBER:        1:S1 03CR01509-01(DLC)

## ADDITIONAL SUPERVISED RELEASE TERMS

The defendant is to provide the Probation Department access to any and all requested financial information.

The defendant must not incur any new credit card charges or open any new credit line without approval of Probation.

The defendant shall notify the U.S. Attorney's Office for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

The defendant shall make restitution in the amount of $12.8 million to be sent to the Court Registry Investment System payable to the Security and Exchange Commission.   Restitution is imposed jointly and severally with the co-conspirator and shall be paid according to the schedule set forth on page 6.

The defendant shall be supervised by the district of residence.

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
          Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___5___ of ___6___

DEFENDANT:        THOMAS T. PROUSALIS, JR.
CASE NUMBER:      1:S1 03CR01509-01(DLC)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|         | **Assessment** | **Fine** | **Restitution** |
|---------|----------------|----------|-----------------|
| **TOTALS** | $ 300.00 | $ 0 | $ 12.8 million |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|-------------------|------------------|-------------------------|----------------------------|
|                   |                  |                         |                            |
| **TOTALS**        | $          $0.00 | $          $0.00        |                            |

☐ Restitution amount ordered pursuant to plea agreement   $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page __6__ of __6__

DEFENDANT:    THOMAS T. PROUSALIS, JR.
CASE NUMBER:    1:S1 03CR01509-01(DLC)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A    X    Lump sum payment of $ ___300.00___ due immediately, balance due

      ☐ not later than _____ , or
      ☐ in accordance   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B    ☐    Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
      term of supervision; or

E    ☐    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
      imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F    X    Special instructions regarding the payment of criminal monetary penalties:

      Restitution payment shall begin while the defendant is in prison. If the defendant is engaged in a non-UNICOR work
      program, the defendant shall pay $25 per quarter toward restitution. However, if the defendant participates in the
      UNICOR program as a grade 1 though 4, he shall pay 50% of his monthly UNICOR earnings. Thirty days after release
      from prison, the defendant shall pay 20% of his gross monthly income up to $100,000; 40% of gross monthly income
      above $100,0000 and up to $1,000,000; 50% of gross monthly income above $1,000,000.00 toward the payment of
      restitution.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during
imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial
Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

X    Joint and Several

      Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
      and corresponding payee, if appropriate.

      Robert T. Kirk, Jr., 03 Cr. 1509

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☐    The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**EXHIBIT 7**

Opinion and Order, *Prousalis v. United States*, No. 16-3349 (S.D.N.Y. Sept. 19, 2016)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
THOMAS T. PROUSALIS, JR.,           :           16cv3349
                                    :           03cr01509
                       Petitioner,  :
                                    :        OPINION & ORDER
                                    :
          -v-                       :
                                    :
UNITED STATES OF AMERICA,           :
                                    :
                       Respondent.  :
                                    :
------------------------------------X
DENISE COTE, DISTRICT JUDGE:

     In the midst of his criminal trial, petitioner Thomas

Prousalis ("Prousalis") pleaded guilty in 2004 to three separate

charges of conspiring to commit fraud and to fraud.  Prousalis

had acted as outside counsel to busybox.com Inc. ("Busybox") at

the time of its initial public offering ("IPO") in 2000.  He

explained during his allocution that he had acted with the

intent to defraud investors and knew that he was doing something

wrong and violating the law in connection with various false

statements and omissions in the IPO documents.  He now brings a

petition for a writ of error coram nobis to vacate his 2004

conviction.  Prousalis contends that the Supreme Court's

decision in Janus Capital Grp., Inc. v. First Derivative

Traders, 564 U.S. 135 (2011), supports this petition because of

the way in which it substantively alters the Rule 10b-5

landscape.  For the following reasons, the petition is denied.

### Background

Prousalis, an attorney, was arrested on January 7, 2004, on a two count indictment charging him with conspiracy to commit securities, mail, and wire fraud, and with wire fraud, in violation of 18 U.S.C. § 371 and 15 U.S.C. §§ 78j(b) and 78ff, respectively.  On May 12, a superseding indictment was filed. It added a third count charging a violation of 15 U.S.C. § 77x and 17 C.F.R. § 228.509.  Trial began on June 7, 2004.  Eight witnesses testified at trial before Prousalis pleaded guilty. The procedural history and trial evidence are described in an Opinion denying Prousalis's 2006 petition for a writ of habeas corpus.  Prousalis v. United States, Dkt. No. 03cr1509 (DLC), 2007 WL 2438422, (S.D.N.Y. Aug. 24, 2007) (the "2007 Opinion"). The 2007 Opinion is incorporated here.  At his plea allocution and again at the sentencing hearing, Prousalis described his scheme to defraud.  Id.

On October 28, 2004, Prousalis was sentenced principally to 57 months' imprisonment.  He was also ordered to pay restitution in the amount of $12.8 million.  Prousalis appealed his conviction.  On December 29, 2005, the United States Court of Appeals for the Second Circuit dismissed the appeal because of the defendant's voluntary waiver of his right to appeal.

On November 6, 2006, Prousalis filed a petition for a writ of habeas corpus.  The petition was denied on August 24, 2007.

Prousalis appealed the denial of his petition.  On August 26,
2008, the Second Circuit dismissed the appeal because Prousalis
has not made a substantial showing of the denial of a
constitutional right.

On June 13, 2011, the Supreme Court decided Janus.  That
decision defined what it means to make an untrue statement in
the context of a private civil action alleging a violation of
Rule 10b-5.  According to the Court, "the maker of a statement
is the person or entity with ultimate authority over the
statement, including its content and whether and how to
communicate it."  Janus, 564 U.S. at 142.

On February 22, 2012, Prousalis filed a petition pursuant
to 28 U.S.C. § 2241 in the Eastern District of Virginia, which
was the site of his supervised release, arguing that the conduct
for which he was convicted was no long criminal in light of
Janus.  On March 20, the district court denied the petition
because "[t]he Janus decision stemmed from a line of decisions
limiting judicially created private causes of action," and has
no application in the criminal context and because the charges
to which Prousalis pleaded guilty, including his acts of aiding
and abetting the criminal conduct, fall outside the substantive
scope of the Janus decision.  Prousalis v. Moore, No. 12cv134
(JAG), 2013 WL 1165249, at *6 (E.D. Va. Mar. 20, 2013), aff'd,
751 F.3d 272 (4th Cir. 2014).  The Fourth Circuit affirmed the

3

denial of the petition.  The majority held that Janus was
inapplicable outside the context of an implied private right of
action.  Prousalis v. Moore, 751 F.3d 272, 276 (4th Cir. 2014).
In a concurrence, Chief Judge Traxler concluded that § 2(b) of
Title 18 imposed criminal liability on one who causes an
intermediary to commit a criminal act.  Accordingly,
"Prousalis's willful intent to defraud, combined with Busybox's
duty not to make the charged material misrepresentation and
omissions, made it a crime for Prousalis to cause Busybox to
make the statement at issue."  Id. at 280.  The Supreme Court
denied Prousalis's petition for a writ of certiorari on January
12, 2015.

On March 3, 2016, Prousalis filed a third habeas petition,
pursuant to § 2241, in the United States District Court for the
District of Columbia.  He again sought relief in reliance on the
Janus decision.  On April 11, the petition was transferred to
this Court.  On June 24, this Court transferred the petition to
the United States Court of Appeals for the Second Circuit as a
successive petition.

On August 22, 2016, the Court of Appeals remanded the
petition to this Court to determine whether Prousalis is in
custody, and if not, whether to construe his petition as seeking
a writ of error coram nobis.  Prousalis v. United States, No.
16-2235, Dk. No. 13 (2d Cir. Aug. 22, 2016).  Prousalis conceded

in a letter of August 27 that he does not satisfy the
jurisdictional in custody requirement for a habeas petition.[1]
Prousalis requested that his current petition be treated as a
petition for a writ of error coram nobis.

## Discussion

"A writ of error coram nobis is an extraordinary remedy,
typically available only when habeas relief is unwarranted
because the petitioner is no longer in custody."  Kovacs v.
United States, 744 F.3d 44, 49 (2d Cir. 2014) (citation
omitted).

> [T]o obtain coram nobis relief a petitioner must
> demonstrate that 1) there are circumstances compelling
> such action to achieve justice, 2) sound reasons exist
> for failure to seek appropriate earlier relief, and 3)
> the petitioner continues to suffer legal consequences
> from his conviction that may be remedied by granting
> of the writ.

Fleming v. United States, 146 F.3d 88, 90 (2d Cir. 1998).  For
purposes of a writ of error coram nobis, the petitioner's
conviction is presumed to be correct, and the burden rests on
the accused to show otherwise.  Foont v. United States, 93 F.3d
76, 78-79 (2d Cir. 1996).

---

[1] Prousalis's term of supervised release concluded in 2013.
Although Prousalis has an ongoing obligation to make restitution
payments, this does not render him "in custody" for purposes of
habeas corpus.  See Kaminski v. United States, 339 F.3d 84, 88-
89 (2d Cir. 2003) (holding that challenge to restitution order
is not cognizable as a habeas petition because the petitioner is
not in custody).

As an initial matter, Prousalis's petition is an improper attempt to seek review of the Fourth Circuit's decision affirming the denial of his February 22, 2012 habeas petition. In the instant petition, Prousalis argues that the Fourth Circuit decision was "errant" and seeks a redetermination. Prousalis already petitioned the Supreme Court for a writ of certiorari from the decision of the Fourth Circuit, which was denied.  "A writ of coram nobis is not a substitute for appeal," Foont, 93 F.3d at 78, and thus Prousalis's petition will be denied.

Even if this petition were not foreclosed by the Fourth Circuit's decision in Prousalis v. Moore, 751 F.3d 272, 276 (4th Cir. 2014), Prousalis has not shown an entitlement to a writ of error coram nobis.  During his plea allocution, Prousalis admitted that he knowingly omitted material information from a registration statement for Busybox securities.  He further admitted that he knew, at the time, that his conduct violated the law, and that he acted with the intent to deceive investors. Indeed, Busybox itself was among the victims of his scheme to defraud investors and enrich himself.  Prousalis, 2007 WL 2438422, at *6.  For these reasons, Janus, which held that an investment advisor was not the "maker" of a prospectus in the context of a civil claim, does not affect Prousalis's criminal convictions for conspiracy and for securities fraud.  Even if

Janus has some application in criminal prosecutions for securities fraud -- an issue yet to be addressed by the Second Circuit -- Prousalis's conviction would still stand because even if he was not himself the "maker" of the false statements, he aided and abetted and conspired with others in the making of the fraudulent registration statements and omissions, and engaged in a scheme to defraud.[2]

---

[2] "The aiding and abetting statute provides that a defendant who aids, abets, counsels, commands, induces or procures the commission of an offense against the United States is punishable as a principal. To prove that a defendant aided and abetted a substantive crime, the Government must establish that the underlying crime was committed by someone other than the defendant and that the defendant himself either acted or failed to act with the specific intent of advancing the commission of the underlying crime." United States v. Lange, --- F.3d ---, 2016 WL 4268936, at *6 (2d Cir. Aug. 15, 2016); see also 18 U.S.C. § 2(a).

### Conclusion

Prousalis's March 3, 2016 petition is denied.   The petitioner has not made a substantial showing of a denial of a federal right and appellate review is, therefore, not warranted. Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir. 1998); Rodriquez v. Scully, 905 F.2d 24, 24 (2d Cir. 1990).   Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith.   Coppedge v. United States, 369 U.S. 438, 445 (1962).   The Clerk of Court is directed to close the civil case, docket number 16cv3349.

Dated:     New York, New York
           September 16, 2016

_____
          DENISE COTE
United States District Judge

Copy mailed to:

Thomas T. Prousalis, Jr.

10501 S. Falconbridge Ct.

Richmond, VA 23238

**EXHIBIT 8**

Response Brief, *Prousalis v. United States*, No. 16-3431 (2d Cir. Mar. 7, 2017)

# 16-3431

*To Be Argued By*:
STEPHANIE LAKE

## United States Court of Appeals

### FOR THE SECOND CIRCUIT
### Docket No. 16-3431

◄─◄•••─►

THOMAS T. PROUSALIS, JR.,

*Plaintiff-Appellant,*

—v.—

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE UNITED STATES OF AMERICA

PREET BHARARA,
*United States Attorney for the
Southern District of New York,
Attorney for the United States
of America.*
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2200

STEPHANIE LAKE,
ANNA M. SKOTKO,
*Assistant United States Attorneys,
Of Counsel.*

## TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . .   1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . .   3

   A.  The Offense Conduct  . . . . . . . . . . . . . . . . . .   3

   B.  Procedural History . . . . . . . . . . . . . . . . . . . .   5

ARGUMENT:

The District Court Correctly Denied Prousalis's
   Petition for Writ of Error Coram Nobis . . . . . . .   9

   A.  Applicable Law . . . . . . . . . . . . . . . . . . . . . . .   9

   B.  Discussion . . . . . . . . . . . . . . . . . . . . . . . . . .  11

      1.  Prousalis's Petition Is an Impermissible
         Attempt to Re-Litigate an Issue
         Already Decided in His Case. . . . . . . .  11

      2.  The Supreme Court's Decision in *Janus*
         Did Not Disturb Prousalis's Criminal
         Conviction. . . . . . . . . . . . . . . . . . . . . . .  13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

## TABLE OF AUTHORITIES

*Cases*:

*Calvert v. United States*,
   351 F. App'x 475 (2d Cir. 2009) . . . . . . . . . . . . . 12

*Carlisle v. United States*,
   517 U.S. 416 (1966). . . . . . . . . . . . . . . . . . . . . . . 10

ii

PAGE

*Chin v. United States,*
  622 F.2d 1090 (2d Cir. 1980) . . . . . . . . . . . . . . . 11

*Fleming v. United States,*
  146 F.3d 88 (2d Cir. 1998) . . . . . . . . . . . . . . 10, 11

*Foont v. United States,*
  93 F.3d 76 (2d Cir. 1996) . . . . . . . . . . . . . . . 10, 11

*Janus Capital Grp., Inc. v. First Derivative Traders,*
  564 U.S. 135 (2011) . . . . . . . . . . . . . . . . 2, 7, 9, 13

*Koch v. Sec. & Exch. Comm'n,*
  793 F.3d 147 (D.C. Cir. 2015) . . . . . . . . . . . . . . 15

*Nicks v. United States,*
  955 F.2d 161 (2d Cir. 1992) . . . . . . . . . . . . . . . 10

*Prousalis v. Moore,*
  No. 12 Civ. 134 (JAG), 2013 WL 1165249
  (E.D. Va. Mar. 20, 2013) . . . . . . . . . . . . . . . 8, 12

*Prousalis v. Moore,*
  751 F.3d 272 (4th Cir. 2014) . . . . . . . . . 8, 12, 16

*Prousalis v. Moore,*
  135 S. Ct. 990 (2015) . . . . . . . . . . . . . . . . . . . 8

*Prousalis v. United States,*
  Nos. 06-12946 (DLC), 03-1509 (DLC),
  2007 WL 2438422 (S.D.N.Y. Aug. 24, 2007) . . . . . 6

*Sanders v. United States,*
  373 U.S. 1 (1963) . . . . . . . . . . . . . . . . . . . . . 12

*Sec. & Exch. Comm'n v. Monterosso,*
  756 F.3d 1326 (11th Cir. 2014) . . . . . . . . . . . . . 15

iii

PAGE

*United States v. Jordan,*
    927 F.2d 53 (2d Cir. 1991) . . . . . . . . . . . . . . . . . 16

*United States v. Kerner,*
    895 F.2d 1159 (7th Cir. 1990) . . . . . . . . . . . . . . 14

*United States v. Natelli,*
    553 F.2d 5 (2d Cir. 1977) . . . . . . . . . . . . . . . . . 12

*United States v. Richeson,*
    825 F.2d 17 (4th Cir. 1987) . . . . . . . . . . . . . . . 16

*Statutes, Rules & Other Authorities:*

17 C.F.R. § 240.10b-5 . . . . . . . . . . . . . . . . . . . . . . . 7, 15

15 U.S.C. § 78ff(a) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE SECOND CIRCUIT

### Docket No. 16-3431

---

THOMAS T. PROUSALIS, JR.,

*Plaintiff-Appellant.*

—v.—

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

---

## BRIEF FOR THE UNITED STATES OF AMERICA

---

### Preliminary Statement

Thomas T. Prousalis, Jr., appeals from a September 16, 2016, Opinion and Order in the United States District Court for the Southern District of New York by the Honorable Denise L. Cote, United States District Judge, denying his petition for a writ of error coram nobis.

On May 10, 2004, superseding indictment 03 Cr. 1509 (DLC) (the "Indictment") was filed, charging Prousalis in three counts. Count One charged Prousalis and a co-conspirator with conspiracy to commit securities fraud and mail and wire fraud, in violation of Title 18, United States Code, Section 371.

2

Count Two charged Prousalis and the same co-conspirator with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2. Count Three charged Prousalis with failing to disclose the interests of counsel in related public filings, in violation of Title 15, United States Code, Section 77x; Title 17, Code of Federal Regulations, Section 228.509; and Title 18, United States Code, Section 2.

Trial commenced on June 7, 2004, and ended on June 16, 2004, when Prousalis pled guilty to each of the three counts in the Indictment, pursuant to a plea agreement with the Government.

On October 28, 2004, Judge Cote sentenced Prousalis to 57 months' imprisonment, to be followed by a three-year term of supervised release, and ordered that he pay $12.8 million in restitution. Prousalis appealed his conviction. On December 29, 2005, this Court dismissed his direct appeal because Prousalis had voluntarily waived his right to appeal in the plea agreement.

On November 6, 2006, Prousalis filed a petition for a writ of habeas corpus, which was denied on August 24, 2007. Prousalis appealed the denial of his petition, which this Court dismissed on August 26, 2008. On February 22, 2012, Prousalis filed a petition pursuant to Title 28, United States Code, Section 2241 in the Eastern District of Virginia (the district of his supervised release), arguing that the conduct for which he was convicted was no longer criminal in light of the Supreme Court's decision in *Janus Capital Grp., Inc.*

3

*v. First Derivative Traders*, 564 U.S. 135 (2011). That petition was denied on March 20, 2013, and the United States Court of Appeals for the Fourth Circuit affirmed the denial of the petition.[1]

Following the completion of his sentence and period of supervised release, Prousalis filed a third habeas petition in the United States District Court for the District of Columbia, which was transferred to the Southern District of New York on April 11, 2016. On June 24, 2016, Judge Cote transferred the petition to this Court as a successive petition. On August 22, 2016, this Court remanded the petition to the District Court to determine whether Prousalis was in custody and, if not, whether to construe his petition as a petition for a writ of error coram nobis. In a letter to the District Court, Prousalis conceded that he was no longer "in custody" for purposes of habeas corpus and requested that his petition be treated as a petition for a writ of error coram nobis. On September 16, 2016, the District Court denied Prousalis's petition.

## Statement of Facts

### A.   The Offense Conduct

In the late 1990s and early 2000s, Prousalis was working as an attorney who purported to have securi-

---

[1]   The Supreme Court denied Prousalis's petition for a writ of certiorari on January 12, 2015.

4

ties law expertise relevant to small companies search-
ing for capital. (PSR ¶¶ 13-15).[2] Prousalis and Robert
Kirk, Jr., a principal at the investment banking firm
Barron Chase Securities Inc. ("Barron Chase"), began
advising busybox.com, Inc. ("Busybox"), a small inter-
net company, in connection with its efforts to raise cap-
ital through an initial public offering ("IPO") for $10
million or more. (PSR ¶¶ 15-18). Prousalis's fee agree-
ment provided that, upon the close of the IPO,
Prousalis would receive the greater of $375,000 or
7.5% of the IPO's gross proceeds. (PSR ¶ 15).

In the course of preparing Busybox's IPO registra-
tion statement, Prousalis falsely listed his fee as a
fixed $375,000. (PSR ¶ 18). The registration statement
also indicated that Barron Chase would underwrite
the IPO on a "firm commitment basis." (PSR ¶¶ 18-19,
24). Despite later learning that Barron Chase would
not be able to provide a firm commitment underwrit-
ing, Prousalis did not amend the public disclosures or

_____

2   "PSR" or "Presentence Report" refers to the
Presentence Investigation Report prepared by the
United States Probation Office ("Probation Office") in
connection with Prousalis's sentencing; "Docket [#]"
refers to the corresponding entry on the District
Court's docket for 03 Cr. 1509 (DLC); "Br." refers to
Prousalis's brief on appeal; and "A." refers to the ap-
pendix filed with that brief. The citations to the appen-
dix contained in this brief are to a paginated version of
the appendix, which can be provided to the Court upon
request.

5

cancel the IPO. (PSR ¶ 20). Instead, he counseled Busybox to enter into the underwriting agreement anyway, and did not disclose this material change in circumstances to the company. (PSR ¶¶ 20, 24). Barron Chase's failure to fully underwrite the IPO created a shortfall of over $2 million. (PSR ¶ 23). To compensate for the shortfall, Prousalis used proceeds from the IPO to pay his own fee and to purchase IPO shares on behalf of the company's officers and directors, to be used later as salaries or bonuses. (PSR ¶¶ 23, 25). None of this was disclosed in the registration materials, and Prousalis represented to Busybox that the U.S. Securities and Exchange Commission ("SEC") had blessed these arrangements. (PSR ¶ 26).

Busybox's IPO closed in approximately June 2000. (PSR ¶ 28). By mid-2001, Busybox had been delisted from NASDAQ and filed for bankruptcy. (PSR ¶ 29). Prousalis earned approximately $1.2 million as a result of this scheme. (PSR ¶ 28).

## B.  Procedural History

The Indictment was filed on May 10, 2004, charging Prousalis in three counts. Count One charged Prousalis with conspiring to commit securities fraud and wire and mail fraud, in violation of Title 18, United States Code, Section 371. (A. 170-91). Count Two charged Prousalis with "directly and indirectly" committing securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2. (A. 191-92). Count Three charged Prousalis with failing to disclose

6

the interest of counsel, in violation of Title 15, United States Code, Section 77x; Title 17, Code of Federal Regulations, Section 228.509; and Title 18, United States Code, Section 2. (A. 192-93).

Trial began on June 7, 2004. On June 16, 2004, after eight witnesses for the Government had testified, Prousalis pled guilty to all three counts of the Indictment, pursuant to a plea agreement with the Government (the "Plea Agreement"). (A. 245-50). In the Plea Agreement, Prousalis agreed that he would not appeal or bring a collateral challenge to any sentence at or below 57 months' imprisonment. (A. 248-49).

On October 28, 2004, the District Court sentenced Prousalis to 57 months' imprisonment, to be followed by three years of supervised release, and ordered that he pay $12.8 million in restitution. (A. 337-42).

Prousalis appealed his conviction, and on December 29, 2005, this Court dismissed his appeal based on his knowing and voluntary waiver of his right to appeal contained in the Plea Agreement. *United States v. Prousalis*, No. 05-0671 (2d Cir., Dec. 29, 2005). On November 6, 2006, Prousalis filed a petition for a writ of habeas corpus, which the District Court denied on August 24, 2007. *Prousalis v. United States*, Nos. 06-12946 (DLC), 03-1509 (DLC), 2007 WL 2438422 (S.D.N.Y. Aug. 24, 2007). Prousalis appealed that decision, and, on May 2, 2008, this Court dismissed the appeal based on his failure to make a substantial showing of a denial of a constitutional right. *Prousalis v. United States*, No. 08-0372 (2d Cir., May 2, 2008).

7

On February 22, 2012, Prousalis filed a habeas pe-
tition pursuant to Title 28, United States Code, Sec-
tion 2241 in the Eastern District of Virginia, where he
was residing while on supervised release, in which he
argued that the conduct for which he was convicted
was no longer criminal following the Supreme Court's
decision in *Janus Capital Grp., Inc. v. First Derivative
Traders*, 564 U.S. 135 (2011), which held in a private
action under Rule 10b-5[3] for false statements that the
"maker" of a statement "is the person or entity with
ultimate authority over the statement, including its
content and whether and how to communicate it." *Id.*

---

[3]   Rule 10b-5 provides:

It shall be unlawful for any person, di-
rectly or indirectly, by the use of any
means or instrumentality of interstate
commerce, or of the mails or of any facil-
ity of any national securities exchange
. . . [t]o make any untrue statement of a
material fact or to omit to state a mate-
rial fact necessary in order to make the
statements made, in the light of the cir-
cumstances under which they were
made, not misleading . . . . in connection
with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. Title 15, United States Code,
Section 78ff subjects certain violators of Rule 10b-5 to
criminal penalties. 15 U.S.C. § 78ff(a).

8

at 142. The district court in the Eastern District of Virginia denied his motion on March 20, 2012, concluding that "[t]he *Janus* decision stemmed from a line of decisions limiting judicially created private causes of action," and that it had no application in the criminal context. *Prousalis v. Moore*, No. 12 Civ. 134 (JAG), 2013 WL 1165249, at *6 (E.D. Va. Mar. 20, 2013), *aff'd* 751 F.3d 272 (4th Cir. 2014). It further concluded that Prousalis had pled guilty to charges that included aiding and abetting criminal conduct, which were outside of the scope of the Supreme Court's decision in *Janus*. *Id.* at *6-*7. The Fourth Circuit affirmed on May 7, 2014, holding that *Janus* only applies in civil cases, where an implied private right of action under Rule 10b-5 is at issue. *Prousalis v. Moore*, 751 F.3d 272, 276 (4th Cir. 2014). On January 12, 2015, the Supreme Court denied Prousalis' petition for a writ of certiorari. *Prousalis v. Moore*, 135 S. Ct. 990 (2015).

On March 3, 2016, Proualis filed another petition for a writ of habeas corpus pursuant to Title 28, United States Code, Section 2241, this time in the District of Columbia, again seeking relief based on the decision in *Janus*. That petition was transferred to the Southern District of New York on April 11, 2016. On June 24, 2016, the District Court transferred the petition to this Court as a successive petition for habeas relief. On August 22, 2016, this Court remanded to the District Court, instructing it to determine whether Prousalis was "in custody" at the time of filing, and, if not, whether to construe his petition as a petition for a writ of error coram nobis. *Prousalis v. United States*, No. 16-2235 (2d Cir. Aug. 22, 2016). Prousalis then conceded that he was not in custody for purposes of habeas

9

relief, and requested that the District Court treat his petition as a coram nobis petition. (*See* A. 4).

The District Court denied Prousalis's petition on September 16, 2016, finding that (1) the petition was an "improper attempt to seek review of the Fourth Circuit's decision affirming the denial of his February 22, 2012 habeas petition," and (2) even if his petition was not foreclosed, Prousalis was not entitled to a writ of error coram nobis because the holding in *Janus* did not apply to his criminal conviction. (A. 14).

# ARGUMENT

## The District Court Correctly Denied Prousalis's Petition for Writ of Error Coram Nobis

The District Court correctly denied Prousalis's petition for writ of error coram nobis on the grounds that (1) his petition was an improper attempt to seek review of the decisions of the Eastern District of Virginia and the Fourth Circuit, and (2) *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 143 (2011) has no bearing on his criminal conviction. (A. 14). Moreover, Prousalis is not entitled to a writ of error coram nobis because his case does not present circumstances compelling such action to achieve justice.

### A.  Applicable Law

"Coram nobis is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of

10

habeas corpus." *Fleming v. United States,* 146 F.3d 88,
88-90 (2d Cir. 1998) (*per curiam*). It is not a "substitute
for appeal, and relief under the writ is strictly limited
to those cases in which errors . . . of the most funda-
mental character have rendered the proceeding itself
irregular and invalid." *Foont v. United States,* 93 F.3d
76, 78 (2d Cir. 1996) (internal quotations and citations
omitted; alteration in original). In other words, the co-
ram nobis writ may only be issued where "extraordi-
nary circumstances are present." *Id.* (quoting *Nicks v.
United States,* 955 F.2d 161,167 (2d Cir. 1992)). Coram
nobis relief was "traditionally available only to bring
before the court factual errors material to the validity
and regularity of the legal proceeding itself, such as
the defendant's being under age or having died before
the verdict." *Carlisle v. United States,* 517 U.S. 416,
429 (1966) (internal quotations omitted). The Supreme
Court has indicated that coram nobis relief is all but
extinct, explaining that it "is difficult to conceive of a
situation in a federal criminal case today where [a writ
of coram nobis] would be necessary or appropriate." *Id.*
(internal quotation marks omitted, alteration in origi-
nal).

   To obtain relief under the doctrine of coram nobis,
a defendant "must demonstrate that 1) there are cir-
cumstances compelling such action to achieve justice,
2) sound reasons exist for failure to seek appropriate
earlier relief, and 3) the petitioner continues to suffer
legal consequences from his conviction that may be
remedied by granting of the writ." *Foont v. United
States,* 93 F.3d at 79 (internal quotations, citations
and alterations omitted); *accord Fleming v. United*

11

*States*, 146 F.3d at 90 (citing same three require-
ments). Furthermore, "an error of constitutional di-
mension at the time of plea or sentence renders a con-
viction voidable, not void, and coram nobis relief may
be barred by the passage of time." *Foont*, 93 F.3d at 79.

When a petition for a writ of error coram nobis is
reviewed, courts must "presume that the proceedings
were correct" and "[t]he burden of showing otherwise
rests on the petitioner." *Fleming*, 146 F.3d at 90 (inter-
nal quotation marks and citation omitted). Moreover,
this Court will "review *de novo* the issue of whether
the district court applied the proper legal standard,
but [will] review the district court's ultimate decision
to deny the writ for abuse of discretion." *Id.*

## B. Discussion

### 1. Prousalis's Petition Is an Impermissible Attempt to Re-Litigate an Issue Already Decided in His Case

The District Court correctly denied Prousalis's pe-
tition as an improper attempt to seek review of the de-
cisions of the Eastern District of Virginia and the
Fourth Circuit. (*See* A. 14, 16). Indeed, even Prousalis
acknowledges that he is seeking "a 'redetermination'
of his *habeas* petition." (Br. 10). As the District Court
noted, "[a] writ of coram nobis is not a substitute for
appeal." (A. 14 (quoting *Foont*, 93 F.3d at 78)). A de-
fendant cannot use coram nobis to re-litigate issues al-
ready decided against him. *See, e.g., Chin v. United
States*, 622 F.2d 1090, 1092 (2d Cir. 1980) (denying the
petition for a writ of error coram nobis, and explaining
that "once a matter has been decided adversely to a

12

defendant on direct appeal it cannot be relitigated in a collateral attack" (quoting *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977)); *see also Calvert v. United States*, 351 F. App'x 475, 476 (2d Cir. 2009) ("First, as we have already decided appellant's speedy trial claim in his direct appeal, that claim cannot be relitigated [through a petition for a writ of audita querela].").

Prousalis's arguments on this point are unavailing. While *Sanders v. United States*, 373 U.S. 1 (1963), held that *res judicata* does not apply in habeas petitions, the Supreme Court also recognized the absurdity and inefficiency of requiring courts to re-hear the same arguments on collateral review that already have been litigated and decided. Thus, the *Sanders* Court reasonably concluded that a petitioner's successive applications will properly be denied where the petitioner seeks to "retry a claim previously fully considered and decided against him." *Sanders v. United States*, 373 U.S. at 9. ("Similarly, nothing in § 2255 requires that a sentencing court grant a hearing on a successive motion alleging a ground for relief already fully considered on a prior motion and decided against the prisoner.").

In the present case, the Eastern District of Virginia and the Fourth Circuit fully considered Prousalis's arguments and rejected them in thoughtful opinions. *See Prousalis v. Moore*, No. 12 Civ. 134, 2013 WL 1165249 (E.D. Va. Mar. 20, 2013), *aff'd*, 751 F.3d 272 (4th Cir. 2014). Two years later, Prousalis attempted to raise the very same arguments in a petition to a different district court. Under these circumstances, the District Court correctly concluded that the ends of justice do

13

not require a re-determination of whether *Janus* applies to Prousalis's criminal conviction and denied his petition.

### 2.  The Supreme Court's Decision in *Janus* Did Not Disturb Prousalis's Criminal Conviction

In addition, this Court should affirm the District Court's decision because *Janus* has no bearing on criminal cases and because, even if *Janus* did apply in criminal cases, it does not disturb Prousalis's conviction.

First, as the District Court correctly stated, *Janus* held that an investment advisor was not the "maker" of a prospectus in the context of a civil claim under Rule 10b-5—it did not speak to criminal prosecutions for conspiracy and securities fraud. *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. at 143. The Supreme Court clearly established the scope of its opinion, stating: "We granted certiorari to address whether [the adviser] can be held liable *in a private action* under Rule 10b–5 for false statements included in [its client's] prospectuses." *Id.* at 137 (emphasis added). Moreover, the Supreme Court's reasoning—like its framing of the issue—indicates that its holding was confined to cases invoking the implied private right of action and does not extend to the criminal convictions at issue here. The decision in *Janus* was in large part centered on the Supreme Court's discomfort with further expanding a judicially created private right of action—a concern that does not apply to criminal prosecutions. *See Id.* at 142 ("[C]oncerns with the

14

judicial creation of a private cause of action caution against its expansion.").

Despite his efforts to suggest otherwise, Prousalis has not identified any controlling authority that extended this holding to criminal cases. He instead urges this Court, for the first time, to do so. This would not be a proper application of the writ, which may provide relief where there have been changes in the law that plainly apply to a defendant's conduct. *See, e.g., United States v. Kerner*, 895 F.2d 1159, 1162 (7th Cir. 1990) ("To support a coram nobis claim, the petitioner must show first that an intervening change in law has '[sapped] the proceeding of any validity.'" (alteration in original)). A decision that does not on its face apply to Prousalis's conviction—or criminal law, more broadly—cannot divest the proceeding of any validity.

Second, even if *Janus* did apply in criminal cases, it does not warrant granting Prousalis the exceptional relief of a writ of error coram nobis. As an initial matter, *Janus* has no conceivable bearing on Prousalis's conviction for conspiracy to commit mail and wire fraud, as charged in Count One. (*See* A. 274 (confirming, during his plea proceedings, that Prousalis understood "that there would be communications by telephone and through the mail with investors in connection with the IPO with investors who lived in Manhattan or Westchester and would be investing in the IPO by either mailing things interstate or making wire transfers interstate")). In addition, Prousalis's conviction under Count Two was not limited to his conduct in "mak[ing] any untrue statement of a material fact . . ." in violation of Rule 10b-5(b). Prousalis pled

15

guilty to violating all three sub-sections of Rule 10b-5, including "employ[ing] any device, scheme, or artifice to defraud" and "engag[ing] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." (A. 272-73 (plea allocution)); *see also* 17 C.F.R. § 240.10b-5(a), (c). *Janus* did not apply, even in the civil context, to liability under subsections (a) and (c). *See Koch v. Sec. & Exch. Comm'n*, 793 F.3d 147, 156 (D.C. Cir. 2015) ("*Janus* is inapplicable if the alleged Exchange Act violations turn not on statements but on manipulative conduct."), *cert. denied*, 136 S. Ct. 1492, (2016); *Sec. & Exch. Comm'n v. Monterosso*, 756 F.3d 1326, 1334 (11th Cir. 2014) (same).

Finally, as the District Court properly found, even if Prousalis was not the "maker" of the false statements at issue, he would still be guilty of aiding and abetting the crimes charged in Counts Two and Three. (A. 14-15).[4] Subsection 2(b) of Title 18 states that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a

---

[4]  For example, Prousalis allocuted to misrepresenting and working with management to misrepresent the amount of his legal fees by "provid[ing] his client with a bill that was unrelated to the retainer agreement in the amount of approximately $1.25 million." (*See* A. 272).

16

principal." 18 U.S.C. § 2(b). "That provision 'is in-
tended to impose criminal liability on one who causes
an intermediary to commit a criminal act, even though
the intermediary who performed the act has no crimi-
nal intent and hence is innocent of the substantive
crime charged.'" *Prousalis v. Moore*, 751 F.3d at 279
(quoting *United States v. Richeson*, 825 F.2d 17, 20
(4th Cir. 1987)); *see also United States v. Jordan*, 927
F.2d 53 (2d Cir. 1991). At a minimum, "Prousalis's
willful intent to defraud, combined with Busybox's
duty not to make the charged material misrepresenta-
tions and omissions, made it a crime for Prousalis to
cause Busybox to make the statements at issue." *Id.* at
280.

17

## CONCLUSION

**The decision of the District Court should be affirmed.**

Dated:    New York, New York
          March 7, 2017

Respectfully submitted,

PREET BHARARA,
*United States Attorney for the*
*Southern District of New York,*
*Attorney for the United States*
*of America.*

STEPHANIE LAKE,
ANNA M. SKOTKO,
*Assistant United States Attorneys,*
*Of Counsel.*

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Prousalis _____ v.

United States _____

_____

**CERTIFICATE OF SERVICE**
Docket Number: 16-3431 _____

I, Margaret Garnett _____, hereby certify under penalty of perjury that on
　　　　　　　　(name)

March 7, 2016 _____, I served a copy of the Government's Brief in Opposition
　　　　　　　(date)　　　　　　　　　　　　　　　　　　_____

_____
(list all documents)

by (select all applicable)*

- [✓] United States Mail
- [ ] Federal Express
- [ ] Overnight Mail
- [ ] Facsimile
- [ ] E-mail
- [ ] Hand delivery

on the following parties (complete all information and add additional pages as necessary):

| Thomas T. Prousalis, Jr. | 10501 S. Falconbridge Ct. | Richmond | VA | 23238 |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |

March 7, 2016 _____　　　　　/s/ Margaret Garnett _____
　　　Today's Date　　　　　　　　　　　　　　　　　　　Signature

*If different methods of service have been used on different parties, please indicate on a separate
page, the type of service used for each respective party.

Certificate of Service Form

**EXHIBIT 9**

Summary Order, *Prousalis v. United States*, No. 16-3431 (2d Cir. June 30, 2017)

16-3431
Prousalis v. United States of America

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# **SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of June, two thousand seventeen.

PRESENT:
>       DENNIS JACOBS,
>       PIERRE N. LEVAL,
>       REENA RAGGI,
>            *Circuit Judges.*

————————————————————

THOMAS T. PROUSALIS, JR.,
>            *Plaintiff-Appellant*,

>            v.                                      16-3431

UNITED STATES OF AMERICA,
>            *Defendant-Appellee.*

————————————————————

FOR PLAINTIFF-APPELLANT:        Thomas T. Prousalis, Jr. (*on the brief*), pro se, Richmond, VA.

MATTHEW GREENFIELD, Gibson, Dunn & Crutcher LLP, New York, NY.

**FOR DEFENDANT-APPELLEE:**   STEPHANIE LAKE (Anna Skotko, *on the brief*), Assistant United States Attorney, *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Thomas T. Prousalis, Jr. pleaded guilty in 2004 to defrauding investors in connection with the initial public offering of a company that he served as outside counsel.  In 2012, Prousalis unsuccessfully sought habeas relief in the Eastern District of Virginia, arguing that the conduct for which he was convicted was no longer criminal in light of *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011). Prousalis subsequently petitioned the United States District Court for the Southern District of New York (Cote, *J.*) for a writ of error coram nobis on the same basis.  He now appeals the district court's judgment denying that petition.  We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"Coram nobis is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998) (per curiam). It "is not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) (internal quotation marks and alterations omitted).  The coram nobis petitioner must demonstrate that "1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by

2

granting of the writ." *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014) (internal quotation marks omitted).

This Court reviews the denial of a writ of error coram nobis for abuse of discretion, but we review de novo whether the district court applied the proper legal standard. *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000). Here, the district court applied the proper legal standard and correctly determined that there were no circumstances compelling coram nobis relief.

Prousalis argues that he is entitled to coram nobis relief because, under *Janus*, he was not the "maker" of the false statements that led to his conviction for securities fraud. The government argues, inter alia, that *Janus* is not applicable in criminal cases. We need not address this issue. Prousalis's conviction would stand regardless of *Janus*'s application in this case because he allocuted to conduct that constitutes a violation of 18 U.S.C. § 2(b), which provides that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

We have considered all of Prousalis's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

3

U.S. POSTAGE
PAID
ALEXANDRIA, VA
22304
FEB 01, 18
AMOUNT

**$10.95**

R2304E105934-17

PRIOR
★ MAI



2018 FEB -6   AM 10: 54

UNITED
POSTAL

For Domestic and International Use    Label 107R, May 2014

U.S. District Court
Pro Se Intake Unit
500 Pearl Street, Room 200
New York, New York 10007-1312



ry Day: 02/03/2018

KING NUMBER

7 8032 1958 34

FedEx Office